[Civ. No. 66150. Second Dist., Div. Four. July 12, 1984.]

ELIZABETH THURSTON et al., Plaintiffs and Appellants, v.
SOUTHERN CALIFORNIA PUBLIC POWER AUTHORITY et al.,
Defendants and Respondents.

**COUNSEL**

Mark E. Montpas for Plaintiffs and Appellants.

Rourke & Woodruff, Alan R. Watts, Lydia S. Levin, Lois E. Jeffrey, Mudge, Rose, Guthrie, Alexander & Ferdon, Edward W. Long, John J. Kirby, Jr., Thomas G. Gallatin, Jr., Ira Reiner, City Attorney, Edward C. Farrell, Chief Assistant City Attorney, Ralph Guy Wesson and Charles W. Sullivan, Assistant City Attorneys, for Defendants and Respondents.

## OPINION

**MUNOZ, J.**\*—Appellants Elizabeth Thurston, Tim F. Brick, and Giselle Dallan (appellants) appeal the denial of their motion for preliminary injunction preventing respondents, Southern California Public Power Authority (Authority) the Los Angeles Department of Water and Power (DWP), and various unnamed defendants from selling or issuing revenue bonds to finance a purchase from Salt River Project Agricultural Improvement and Power District (Salt) of an ownership in the Palo Verde Nuclear Generating Station (Palo Verde) which is located in Arizona. Appellants also sought to prevent the expenditure of public monies by respondents with respect to the purchase from Salt.

### STATEMENT OF FACTS

Authority is a joint powers agency and public entity composed of the Imperial Irrigation District and the cities of Anaheim, Azusa, Banning, Burbank, Colton, Glendale, Los Angeles, Pasadena, Riverside, and Vernon. It was formed under the authority of the Joint Exercise of Powers Act (Gov. Code,[1] § 6500 et seq.) and the agreement of its members on November 1, 1980, under a joint powers agreement (Agreement). DWP is a department organized and existing under article 22 of the Charter of the City of Los Angeles. Under this agreement, Authority is a public entity which is separate from its members and governed by a board of directors consisting of the chief executive of each member.

On August 14, 1981, Authority entered into an agreement with Salt (Assignment Agreement) whereby Authority agreed to purchase a 5.91 percent undivided interest in Palo Verde, certain associated facilities and certain related contractual rights, and a 6.55 share of the right to use certain portions of a transmission system. Authority sold the entire electrical capability

---

\*Assigned by the Chairperson of the Judicial Council.

[1]Unless otherwise indicated, all further section references shall be to the Government Code.

associated with its 5.91 percent ownership interest in Palo Verde to 10 of its members (Participating Members) pursuant to power sales contracts (Contracts) entered into in 1981. Under the Contracts, each Participating Member is entitled to the generation capabilities and electrical output from Palo Verde based upon their respective Contracts with Authority. Payment obligations under the Contracts constitute operating expenses of the respective Participating Members, and payment is to be made solely from their electrical systems revenues. Additionally, every member of Authority approved, by ordinance, the Authority's issuance of bonds and notes to provide funds for the acquisition of Authority's interest in Palo Verde and for the continuing capital costs that will be associated with that interest.

On July 27, 1982, less than three weeks before Authority was due to issue its bonds to finance its acquisition of interest in Palo Verde, appellants brought this action for preliminary and permanent injunction. The hearing on the motion for preliminary hearing was scheduled and heard three days before Authority was to issue its bonds. At that time, the motion for preliminary injunction was denied.

As one ground for issuing of the injunction, appellants asserted that certain pending Arizona lawsuits precluded the satisfaction of certain conditions precedent to the Assignment Agreement. They argued these lawsuits made Authority's participation in Palo Verde illegal, and that the participation in Palo Verde was fiscally unsound. Appellants also alleged that the decisions to enter into agreement were based upon fraud perpetrated upon the various entities which compose Authority. On this appeal, they assert basically the same contentions.

In the court below, appellants failed to present evidence of fraud. Since there was no evidence to back up this contention, there was no abuse of discretion in denying relief on this ground. (*Ancora-Citronelle Corp.* v. *Green* (1974) 41 Cal.App.3d 146 [115 Cal.Rptr. 879].)

Insofar as the allegations that participation in Palo Verde is fiscally unsound, it is clear that ". . . the judiciary has no authority to invalidate duly enacted legislation." (*City and County of San Francisco* v. *Cooper* (1975) 13 Cal.3d 898, 915 [120 Cal.Rptr. 707, 534 P.2d 403].) This court does not function to determine the wisdom of the legislature's acts. As long as that body does not exceed its powers, or its judgment or power is not influenced by corruption, this court cannot substitute its judgment for that of the legislative body. (*Nickerson* v. *San Bernardino* (1918) 179 Cal. 518, 522-523 [177 P. 465].)

■ In regard to the Arizona lawsuit, what appellants really contend is that they have the standing to assert what they consider deficiencies to completion of the Assignment Agreement. However, Agreement was entered into by the parties and was completed prior to filing this lawsuit. Moreover, what appellants really wish the court to do is accept their belief as to the validity of the Arizona lawsuits, substitute this belief in place of that held by the parties to the contract, and then use this substituted belief to invalidate the contract. Since appellants have cited no authority supporting the proposition that the court's failure to grant a preliminary injunction on this point constitutes abuse, we find no abuse of discretion.

■ Appellant's next contend that the interest to be paid on the bonds issued by Authority will exceed 8 percent in violation of section 6553. Respondents counter by arguing that section 53531 has superseded section 6553 and section 53531 evinces a legislative intent to allow government entities to pay a higher rate of interest due to inflation. This is a case of first impression on this issue, and there is no reported case law as to either section.

Respondents argue this issue is not properly before this court since there was no showing of sufficient facts under oath indicating at what interest rate Authority would issue bonds. (Code Civ. Proc., § 527; *Ancora-Citronelle Corp.* v. *Green, supra,* 41 Cal.App.3d 146.) What respondents overlook, however, is the two declarations under penalty of perjury which they filed. This first by Charles Montoya, the assistant secretary of Authority, indicates that the current interest rate for public finance bonds was hovering at 12 percent, and if an injunction was granted, the rate might rise above 12 percent and the taxpayers might have to pay an additional $250 million over the period of the bonds. Additionally, the declaration of Norman J. Powers, the chief financial officer for DWP indicates the current rate was in the 12 percent range and was expected to go higher. He estimated a 1 percent increase would cost the taxpayers an additional $83 million during the term of the bonds. Both declarations, although directed to the irreparable harm that would occur had the injunction issued, clearly indicate Authority was going to be issuing bonds at an interest rate in excess of the 8 percent provided for in section 6553. This was sufficient evidence.

Sections 6500 through 6583 deal with Joint Power Agreements. Originally added to the law of this state in 1949, this body of law allows public agencies to enter into agreements to jointly exercise any power that is common to the respective agencies. In article II, commencing with section 6540, the legislation deals with the power of the entities created by the Joint Power Agreements to issue bonds. Section 6553 specifically provides "the maxi-

mum rate of interest . . . shall not exceed 8 percent per annum." When added in 1955, section 6553 originally provided for 6 percent, but that amount was raised to 7 percent in 1969, and then in 1975 the section was amended to its current rate of 8 percent.

Section 53531, on the other hand, is contained within that body of law covered by sections 53000 through 54965. Basically this body of law deals with powers and duties of cities, counties and other agencies. Article VII which contains sections 53530 through 53533 deals with interest rates on bonds. Section 53530 which was added in 1969 provides that a "local agency" as used in that article includes "public entities." Respondent is a "public entity" by virtue of section 6507. Section 53531 was also added in 1969 and originally provided that agencies covered by that section, including "public entities," could not issue bonds with an interest rate exceeding 7 percent. This amount was raised to 8 percent in 1974, to 10 percent in 1980, and to 12 percent in 1981. The 1981 amendment specifically provided that the 12 percent maximum legal rate of interest would last only until January 1, 1984. This deadline was extended to January 1, 1986, by the Legislature in 1983. That same legislation provides that on January 1, 1986, the maximum legal rate of interest will revert to 10 percent.

Respondents contend that since Authority is a "public entity" specifically covered by section 53531, the 8 percent limitation contained within section 6553 does not apply. They argue section 53531 by stating "Any provision of law specifying the maximum interest rate on bonds to the contrary notwithstanding," clearly evinces a legislative intent to supersede section 6553.

A review of the manner in which both sections have been amended by the Legislature discloses there has been a legislative intent to have section 53531 supersede and replace not only section 6553 but also numerous other sections dealing with maximum interest rates that can be paid by a "local agency" as that term is used in section 53530. (See, e.g., *Burks* v. *Monterey Regional Water Pollution Control Agency* (1984) 156 Cal.App.3d 1013 [203 Cal.Rptr. 368].)

In 1969 the Legislature, faced with a financial crisis, passed as urgency legislation chapter 600 of the Statutes of 1969. Section 4 of that chapter amended section 6553 by raising the maximum interest rate allowable to 7 percent. Section 7 of that same chapter added for the first time article 7 commencing with section 53530 to the Government Code. Article 7 contains sections 53530, 53531, and 53532. As originally added, section 53531 provided for a maximum interest rate of 7 percent per annum. Chapter 600 also amended several Water, Government, Health and Safety, and Educa-

tion Code sections by allowing the respective agencies and boards to issue bonds with an interest rate not exceeding 7 percent per annum. Section 16 of chapter 600 stated the reason for the urgency legislation: "Because of the unusually high interest rates which prevail in the municipal bond market, the issuers affected by this act may or will be unable to sell bonds under present statutory limitations on interest rates. Unless these limitations are changed immediately, it will be impossible to finance critically needed public improvements."

In 1974, the Legislature was once again confronted with the problems caused by inflation. At that time, by urgency legislation, it passed chapter 721 which amended section 53531 along with several other Water and Health and Safety Code sections by providing that agencies and governmental bodies who were covered by the respective sections could raise the maximum interest rate to 8 percent. (Stats. 1974, ch. 721.)

The following year the Legislature amended section 6553 and almost 100 other sections in various codes by providing that the governmental bodies covered by the respective sections could raise the maximum interest rate to 8 percent. (Stats. 1975, ch. 130.) Section 101 of chapter 130 made the legislative intent clear. "It is the intent of the Legislature that the amendments made by this act are intended solely to conform various statutes with the provisions of Chapter 721 of the Statutes of 1974, and are declaratory of existing law. The Legislature does not intend by this act to render inapplicable Chapter 721 of the Statutes of 1974 to any entity subject to the provisions of such act and operating pursuant to statutory authority which has not as yet been amended to reflect the changes made by Chapter 721."

Since 1975, there have been no further amendments to section 6553, but section 53531 has been amended three times as indicated *supra*. This inaction, insofar as section 6553 is concerned, is in keeping with the legislative intent to have section 53531 act as a master section for and supersede the more than 80 sections that would otherwise have to be amended each time the Legislature felt that maximum interest rate allowable by law had to be changed. In light of the legislative intent declared in section 101 of chapter 130 of the Statutes of 1975 and the express language of "Any provision of law specifying the maximum interest rate on bonds to the contrary notwithstanding" which is contained in section 53531, there is no question that section 53531 is intended to supersede section 6553 to the extent the two sections specify differing interest rates.

Any remaining question as to the legislative intent has now been resolved by the Legislature itself. On July 6, 1984, chapter 310 of the Statutes of

1984 was signed by the Governor as urgency legislation. Section 1 of chapter 310, which adds section 53531.1 to the Government Code, states: "(a) The Legislature hereby finds and declares that, in enacting and amending Sections 53530 and 53531, the intent has been, and continues to be, to provide general authority to local agencies to issue bonds bearing interest at the coupon rate specified in Section 53531, as amended from time to time. This general authority is intended to be in addition to, and not limited by, specific provisions authorizing bonds of particular local agencies. Due to the general application of Section 53531, it has been unnecessary to amend the numerous statutes which contain their own specific maximum interest rates. This section contains the intent of the Legislature in previously enacting and amending Sections 53530 and 53531 and does not affect Section 53532 or 53533. This section does not constitute a change in, but is declaratory of, the existing law in effect since 1969."

■ "[W]here the same subject matter is covered by inconsistent provisions, one of which is special and the other general, the special one, whether or not enacted first, is an exception to the general statute and controls unless an intent to the contrary clearly appears." (*Warne* v. *Harkness* (1963) 60 Cal.2d 579, 588 [35 Cal.Rptr. 601, 387 P.2d 377].)

■ Here, there is expressed a contrary intent. The Legislature has made it clear that Authority and other such agencies may pay the maximum interest rate specified in section 53531. Since that interest rate is presently 12 percent, there was no error in denying the preliminary injunction.

The order appealed from is affirmed.

Kingsley, Acting P. J., and McClosky, J., concurred.