BILL LOCKYER Attorney General CLAYTON P. ROCHE Deputy Attorney General
THE HONORABLE TONY STRICKLAND, MEMBER OF THE STATE ASSEMBLY, has requested an opinion on the following question:
May a member of the governing board of a joint powers agency cast a valid vote on a matter before the agency that is inconsistent with the position taken by the legislative body which appointed the member?
 CONCLUSION
A member of the governing board of a joint powers agency may cast a valid vote on a matter before the agency that is inconsistent with the position taken by the legislative body which appointed the member.
 ANALYSIS
The South Coast Area Transit ("SCAT") is a joint powers agency consisting of the County of Ventura and the cities of Ojai, Oxnard, Port Hueneme, and San Buenaventura. It operates a public transportation system within the geographical boundaries of its member agencies. Recently one of the city representatives on SCAT's five-member board of directors voted in favor of an additional expenditure of agency funds which was inconsistent with the position taken by the city council of his city.[1]
Was his vote valid? We conclude that it was.
The Joint Exercise of Powers Act (Gov. Code, §§ 6500-6599; "Act")[2] authorizes the parties to a joint powers agreement to create "an agency or entity which is separate from the parties to the agreement and is responsible for the administration of the agreement" (§ 6503.5; see also § 6507; Rider v. City of San Diego (1998) 18 Cal.4th 1035, 1050; Thurston v. Southern Cal. Public Power Authority (1984) 158 Cal.App.3d 236, 238; People v. Shepherd (1977)74 Cal.App.3d 334, 337; County of San Joaquin v. Stockton Swim Club (1974) 42 Cal.App.3d 968, 971-972; 83 Ops.Cal.Atty.Gen. 82 (2000); 81 Ops.Cal.Atty.Gen. 362 (1998); 81 Ops.Cal.Atty.Gen. 213 (1998)). Here, SCAT is constituted as a separate and distinct public agency governed by a board of directors composed of five members.
The Act provides that a joint powers agency composed exclusively of cities, counties, or public districts "may . . . be composed exclusively of officials elected to one or more of the governing boards of the parties to such agreement." (§ 6508.) Here, the SCAT agreement provides that "[e]ach Board member shall at all times during his or her term be a member of the governing body of the member agency which appointed him or her."
As a general principle, it is well recognized that a government official may not act in excess of his or her authority. "`No government, whether state or local, is bound to any extent by an officer's acts in excess of his [or her] authority.' [Citation.]" (Barchett v. City of Newport Beach (1995) 33 Cal.App.4th 1472, 1479.) "One who deals with the public officer stands presumptively charged with a full knowledge of that officer's powers, and is bound at his peril to ascertain the extent of his powers to bind the government for which he is an officer. . . . [Citation.]" (Horsemen's Benevolent Protective Assn. v. Valley Racing Assn. (1992) 21 Cal.App.4th 1538[4 Cal.App.4th 1538, 1564.)
With respect to the SCAT board member in question, his own city council had previously taken a position regarding the proposed expenditure of agency funds. Such position, however, did not limit his authority when he cast his vote. His authority was to exercise his own discretion when voting. (See Harbach v. El Pueblo de Los Angeles etc. com. (1971)14 Cal.3d 828, 834 [joint powers agency board member may exercise discretion in voting similar to a city council member].) Nothing in the Act, the SCAT agreement, or the ordinances or resolutions of his city required that he vote only as directed by the city council.
Specifically, under the SCAT agreement, the actions of the SCAT board are "by majority vote; provided that the vote of each Board member shall be weighted and shall be given the value and effect equal to the proportion that the annual monetary contributions of the member agency bears to the total annual contribution of all the member agencies." Nothing in the SCAT agreement remotely suggests that "approval" by the various legislative bodies of the county and cities is necessary to make actions taken by the board of directors official. Such a requirement would subject each SCAT action to constant review and verification.
Of course, a member of the board of directors of a joint powers agency will normally vote in accordance with the position of his or her appointing power. How an appointing power may ensure compliance with its wishes is for the appointing power to determine. For example, a "contrary" vote may result in removal of the person from the board of directors, but it will not effect the validity of the vote itself. Here, the SCAT agreement makes the members of the board of directors "at pleasure" appointments: "Each Board member shall serve at the pleasure of his or her appointing authority for a term of four (4) years. . . ." The control that an appointing authority has over its appointee is removal from the board of directors.
The fact that a particular vote may involve the expenditure of funds by the joint powers agency does not change our conclusion. With specific regard to each member's responsibility to support the agency's expenditure of funds, section 6504 provides:
 "The parties to the agreement may provide that (a) contributions from the treasuries may be made for the purpose set forth in the agreement, (b) payments of public funds may be made to defray the cost of such purpose, (c) advances of public funds may be made for the purpose set forth in the agreement, such advances to be repaid as provided in said agreement, or (d) personnel, equipment or property of one or more of the parties to the agreement may be used in lieu of other contributions or advances. The funds may be paid to and disbursed by the agency or entity agreed upon, which may include a nonprofit corporation designated by the agreement to administer or execute the agreement for the parties to the agreement."
The agreement under which SCAT operates states in relevant part:
 "Annual financial support. At the time of preparing SCATS annual proposed operating budget and proposed capital expenditure budget, the Board shall determine the amount of financial support required by SCAT for the fiscal year. The support required for the annual operating budget, after making maximum use of operating assistance made available from other sources such as the Federal Transit Administration, shall be:
 "(1.) Equitably apportioned, for fixed route service, among the member agencies on the basis of the estimated costs of transportation fixed route service mileage planned to be provided within each member agency's territorial jurisdiction.
 "(2.) For ADA paratransit service, computed for each member agency based on the estimated cost of the ADA paratransit service and the usage of service by residents of the member agency for the preceding January through December period.
 "The support required for the capital expenditure budget shall be equitably apportioned among the member agencies based on the operating cost for fixed route service or computed on the ADA paratransit service method, as appropriate for the type of project, after consideration of:
 "(1.) Funds available from federal grants and other sources;
 "(2.) Transportation service mileage requirements for capital expenditure for replacement and general system uses;
 "(3.) Special capital costs required for equipment and facilities to provide additional or increased services within any member agency's territorial jurisdiction."
Accordingly, the cities and county are obligated under the SCAT agreement to provide SCAT with the amount of funds determined to be necessary by the SCAT board of directors. SCAT, as an independent entity, is not obligated to ensure that its budgetary outlays comport with all of its members' desired wishes. Rather, the county and the cities are contractually bound to provide the requisite funds to SCAT as established by the SCAT board of directors. Should a particular city or the county find that the terms of the SCAT agreement are unacceptable, it may attempt to have the terms modified or it may withdraw from SCAT under the procedures specified in the agreement.
In answer to the question presented, therefore, we conclude that a member of the governing board of a joint powers agency may cast a valid vote on a matter before the agency that is inconsistent with the position taken by the legislative body which appointed the member.
[1] He voted for the increased expenditure after receiving additional information at the hearing on the matter, and thereafter his city council "approved" his vote that was cast.
[2] All references hereafter to the Government Code are by section number only.