[No. D003544. Fourth Dist., Div. One. Oct. 21, 1986.]

Conservatorship of the Person of GLENYS IVEY.
SAN DIEGO COUNTY DEPARTMENT OF SOCIAL SERVICES,
Petitioner and Respondent, v.
GLENYS IVEY, Objector and Appellant.

**[And four other cases.]**[1]

---

[1]*Conservatorship of Henderson* (No. D003545); *Conservatorship of Woodward* (No. D004027); *Conservatorship of Stroud* (No. D004058); *Conservatorship of Stulken* (No. D003748).

## COUNSEL

Sharron Voorhees, Michele Sacks Lowenstein, Robert D. Frank, Joel M. Kriger and John M. Schau, under appointments by the Court of Appeal, for Objectors and Appellants.

Lloyd M. Harmon, Jr., County Counsel, Daniel J. Wallace, Chief Deputy County Counsel, Susan A. Crabtree and Mark C. Mead, Deputy County Counsel, for Petitioner and Respondent.

## OPINION

## LEWIS, J.—

### I

### FACTUAL AND PROCEDURAL BACKGROUND

In each of these cases consolidated on appeal, the superior court found the proposed conservatees gravely disabled within the meaning of the Lanterman-Petris-Short Act (Welf. & Inst. Code,[2] §§ 5000-5464) (LPS Act) and appointed conservators of the person for each of them.

The conservatees appeal the orders appointing the conservators.[3] They jointly raise the issue of whether transmittal of the conservatorship investigation report to the proposed conservatee as required by section 5354 is satisfied by service of the report on the proposed conservatee's court-appointed attorney under Code of Civil Procedure section 1015. In each of

---

[2]All statutory references are to the Welfare and Institutions Code unless otherwise specified.

[3]Although at least one of the conservatorships will have expired by the time this opinion is filed, resolution of the issue as to any such expired case is appropriate because the matter is one of general interest and likely to reappear in the future. (*Conservatorship of Manton* (1985) 39 Cal.3d 645, 648, fn. 1 [217 Cal.Rptr. 253, 703 P.2d 1147].)

these cases, except Stroud's,[4] the counselor in mental health as the officer providing conservatorship investigation personally served the report on the facility at which each proposed conservatee resided and served the report by mail on the attorney appointed to represent each proposed conservatee. In no case, except Stroud's, did the counselor give or mail the report directly to the proposed conservatee.

The conservatees contend this practice violates the language of section 5354 which requires the report be transmitted to them.[5] They variously challenge this alleged statutory violation as a denial of due process and a defect in jurisdiction. Glenys Ivey additionally challenges the court's personal jurisdiction over her. Charles Stulken also claims the court erred by not directly consulting with him at the conservatorship hearing as required by Probate Code section 1828, subdivision (b).

For convenience, we discuss only Ivey's appeal in part II of this opinion and we hold the plain meaning of the statute requires at minimum the mailing of the report to the proposed conservatee. We conclude, however, that on the facts of this case the statutory violation neither denied the conservatee due process of law nor deprived the superior court of jurisdiction over her. We thus affirm the judgment in Ivey's case and, based on our opinion in part II, we also affirm the judgment in each of the other cases.

II

APPEAL OF IVEY

Since its adoption in 1967,[6] section 5354 has required transmission of the conservatorship investigation report to the proposed conservatee. Neither at the statute's inception nor in its subsequent amendments[7] has the Legislature elaborated on the meaning of "transmit" in this context. In addition, the parties have not identified nor has our research revealed any case law interpreting the section on this point.

---

[4]Stroud was personally served a copy of the investigation report.

[5]Section 5354 provides in pertinent part: "The officer providing conservatorship investigation shall investigate all available alternatives to conservatorship and shall recommend conservatorship to the court only if no suitable alternatives are available. This officer shall render to the court a written report of investigation prior to the hearing. . . . *A copy of the report shall be transmitted* to the individual who originally recommended conservatorship, to the person or agency, if any, recommended to serve as conservator, and *to the person recommended for conservatorship.*" (Italics added.)

[6]Section 5354 was part of the original LPS Act, added by Statutes 1967, chapter 1667, section 36, operative July 1, 1969.

[7]Section 5354 was amended in 1974, 1978 and 1982. (See Stats. 1974, ch. 833, § 1; Stats. 1978, ch. 1294, § 7; Stats. 1982, ch. 1598, § 7.)

Section 5350[8] provides the procedures of division 4 of the Probate Code shall apply to the establishment, administration and termination of conservatorship for the gravely disabled under the LPS Act. We have examined division 4 (Prob. Code, §§ 1400-3803) and have found no relevant sections which illuminate our issue. Chapter 3 of division 4 (Prob. Code, §§ 1460-1469) in particular deals with notices, but it is silent on the matter of *transmission* of an investigative report. Even section 1460 of the Probate Code which specifically lists the conservatee as the recipient of notice deals only with the particulars of the issuance of notice of hearing. The section is not applicable to transmission of a conservatorship investigation report.

Moreover, section 5350, subdivision (e), provides the conservatorship investigation shall be conducted according to the LPS Act and not the Probate Code. In addition, subdivision (f) makes it clear that LPS Act provisions on a particular point control over Probate Code provisions. The section here in question, section 5354, is one such provision. ▇▇ As the Probate Code does not control or provide guidance on the issue of transmission of the report to the proposed conservatee, we turn to interpretation of the Welfare and Institutions Code section itself.

The language of the section is clear. The common meaning of the verb "transmit" as described in Webster's Third New International Dictionary (1966) is "to cause to go or be conveyed to another person or place; send." (P. 2429.) Black's Law Dictionary (5th ed. 1979) also defines "transmit" as "[t]o send or transfer from one person or place to another, or to communicate." (P. 1344.) As the section provides the report shall be transmitted to the proposed conservatee, its plain meaning requires at minimum the mailing of the report directly to the proposed conservatee. The Legislature is presumed to have meant what it said and the plain meaning of the statute governs. (*Great Lake Properties, Inc.* v. *City of El Segundo* (1977) 19 Cal.3d 152, 155 [137 Cal.Rptr. 154, 561 P.2d 244].)

Moreover, the LPS Act since its inception has required the provision of an attorney for the proposed conservatee. (§ 5365.) Being aware of this attorney-client relationship, the Legislature could have specified the report be sent to the attorney. As the Legislature did not, we can only apply the statute as written.

---

[8]Section 5350 provides in pertinent part: "The procedure for establishing, administering and terminating conservatorship under this chapter shall be the same as that provided in Division 4 (commencing with Section 1400) of the Probate Code, except as follows:

" . . . . . . . . . . . . . . . . . .

"(e) Conservatorship investigation shall be conducted pursuant to this part and shall not be subject to Section 1826 or Chapter 2 (commencing with Section 1850) of Part 3 of Division 4 of the Probate Code.

"(f) As otherwise provided in this chapter."

■ The Department of Social Services contends Code of Civil Procedure section 1015 controls and permits, even requires, the report be sent to the proposed conservatee's attorney. Code of Civil Procedure section 1015 provides in part: "[I]n all cases where a party has an attorney in the action or proceeding, the service of papers, when required, must be upon the attorney instead of the party, except the service of subpenas, of writs, and other process issued in the suit." `

However, Code of Civil Procedure section 1015 does not control as it is superseded in this case by the specific statutory provisions of section 5354. Unless repealed expressly or by necessary implication, a special statute dealing with a particular subject constitutes an exception so as to control and take precedence over a conflicting general statute on the same subject. (*Agricultural Labor Relations Bd.* v. *Superior Court* (1976) 16 Cal.3d 392, 420 [128 Cal.Rptr. 183, 546 P.2d 687]; 58 Cal.Jur.3d, Statutes, § 109, pp. 488-489.) This is the case regardless of whether the special provision is enacted before or after the general one (*Agricultural Labor Relations Bd., supra,* 16 Cal.3d at p. 420), and notwithstanding that the general provision, standing alone, would be broad enough to include the subject to which the more particular one relates. (*County of Placer* v. *Aetna Cas. etc. Co.* (1958) 50 Cal.2d 182, 189 [323 P.2d 753]; 58 Cal.Jur.3d, Statutes, § 109, pp. 488-489.)

This rule does not apply if the general and specific statutes can be reconciled. (58 Cal.Jur.3d, Statutes, § 109, pp. 488-489.) In the present case, Code of Civil Procedure section 1015 and section 5354 cannot be reconciled without violating the plain meaning of section 5354. Section 5354, therefore, governs the handling of these conservatorship investigation reports.

In the present case, the failure to give or mail the reports directly to the proposed conservatees contravened the statute and impinged on its protective purposes.

■ The proposed establishment of a conservatorship under the grave disability provisions of the LPS Act threatens a massive curtailment of liberty. The gravely disabled person for whom a conservatorship has been established faces the loss of freedom from physical restraint as well as potential disabilities ranging from loss of control of the payment and collection of debts, loss of control of proxy voting of shares of corporate stock, to loss of control over the institution, maintenance and defense of all actions and proceedings. (*Conservatorship of Roulet* (1979) 23 Cal.3d 219, 227 [152 Cal.Rptr. 425, 590 P.2d 1].)

The gravely disabled conservatee also faces possible loss of rights such as the right to remain licensed to practice a profession, the right to continue

to hold certain public offices, the right to marry, the right to refuse certain types of medical treatment, the right to remain registered to vote and the right to contract. (*Conservatorship of Roulet, supra,* 23 Cal.3d 219, 228.)

In addition, a conservatee suffers from the stigma and loss of reputation inherent in being found to be gravely disabled as a result of a mental disorder. (*Conservatorship of Roulet, supra,* 23 Cal.3d 219, 228-229.)

These significant liberty interests invoke strict application of the protective umbrella of the statutory procedures to all proposed conservatees under the gravely disabled provisions of the LPS Act. (See *Morrissey* v. *Brewer* (1972) 408 U.S. 471, 482 [33 L.Ed.2d 484, 494-495, 92 S.Ct. 2593].) Obviously many persons who are in fact gravely disabled may have ability to constructively use the information in the report. Just as obviously the concern of the statutory requirement is the protection of the rights of that rare proposed conservatee who might be in fact not gravely disabled. At a minimum, mailing of the conservatorship investigation report directly to the proposed conservatee is required.[9]

This conclusion, however, does not require that we reverse the orders.

Ivey's primary attacks on the order are that the court lacked jurisdiction or violated her due process rights by not giving her adequate notice of the relief sought. In making these arguments, however, appellate counsel asks us to ignore trial counsel's stipulation that the petition to establish temporary conservatorship and conservatorship was personally served on the proposed conservatee. We decline to do so. Both the trial court and this court can rely on a lawyer's stipulation particularly where there is no suggestion the lawyer was incompetent and there has been no request to the trial court to set aside the stipulation.

Moreover, based on trial counsel's assumed competence we are satisfied that Ivey's lawyer fully communicated with her about these entire proceedings including the contents of the investigation report. Lacking any hint to the contrary, there is no reason to reverse an order that was made in a fair hearing.

### III

#### APPEAL OF STULKEN

On the record in Stulken's case and based on trial counsel's assumed competence, we are satisfied his counsel fully communicated with Stulken

---

[9]As a matter of practical necessity the report should also continue to be served, as part of the appointment process, on the attorney appointed to represent each proposed conservatee.

about these entire proceedings, including the contents of the investigation report. Accordingly, we conclude there is no reason to reverse the judgment in Stulken's case based on the failure to transmit the investigation report to him pursuant to section 5354.

 Stulken also contends that the failure of the record to reflect a direct consultation with him as required by Probate Code section 1828, subdivision (b), is reversible error.[10] Stulken acknowledges that at his hearing the court advised him, along with several other proposed conservatees, he had the right to be represented by legal counsel both at the hearing and any subsequent proceeding under the LPS Act; the right to object to the appointment of a conservator, to object to any of the disabilities, to object to the placement; and the right to a jury trial with a unanimous verdict and the burden on San Diego County to prove beyond a reasonable doubt that the conservatee is gravely disabled. The record shows the court otherwise advised the proposed conservatees in substantial conformity with subdivision (a) of Probate Code section 1828. The court concluded with the inquiry, "If you have any questions, I'll be happy to try and answer them." It then announced it would be calling the calendar.

Contrary to Stulken's argument, the section, by its terms, requires neither *individual* consultation nor a record of the consultation given. The court

---

[10]Probate Code section 1828 provides in part: "(a) Except as provided in subdivision (c), prior to the establishment of a conservatorship of the person or estate, or both, the court shall inform the proposed conservatee of all of the following:

"(1) The nature and purpose of the proceeding.

"(2) The establishment of a conservatorship is a legal adjudication of the conservatee's inability properly to provide for the conservatee's personal needs or to manage the conservatee's own financial resources, or both, depending on the allegations made and the determinations requested in the petition, and the effect of such an adjudication on the conservatee's basic rights.

"(3) The proposed conservatee may be disqualified from voting if not capable of completing an affidavit of voter registration.

"(4) The identity of the proposed conservator.

"(5) The nature and effect on the conservatee's basic rights of any order requested under Chapter 4 (commencing with Section 1870), and in the case of an allegedly developmentally disabled adult, the specific effects of each limitation requested in such order.

"(6) The proposed conservatee has the right to oppose the proceeding, to have the matter of the establishment of the conservatorship tried by jury, to be represented by legal counsel if the proposed conservatee so chooses, and to have legal counsel appointed by the court if unable to retain legal counsel.

"(b) After the court so informs the proposed conservatee and prior to the establishment of the conservatorship, *the court shall consult the proposed conservatee to determine the proposed conservatee's opinion concerning all of the following:*

*"(1) The establishment of the conservatorship.*

*"(2) The appointment of the proposed conservator*

"(3) Any order requested under Chapter 4 (commencing with Section 1870), and in the case of an allegedly developmentally disabled adult, of each limitation requested in such order." (Italics added.)

here invited consultation by asking if there were any questions and offering to answer them. We view this record as constituting substantial compliance with the statute. Moreover, the statute requires consultation merely to determine the proposed conservatee's *opinions*. This form of consultation does not rise to the level of a proceeding involving the waiver of constitutional rights such as was involved in *Boykin* v. *Alabama* (1969) 395 U.S. 238 [23 L.Ed.2d 274, 89 S.Ct. 1709], and *In re Tahl* (1969) 1 Cal.3d 122 [81 Cal.Rptr. 577, 460 P.2d 449]. Thus, Stulken's reliance on those cases is misplaced.

We decline to interpret the statute as requiring an on-the-record express consultation individually with the conservatee regarding his opinion of the conservatorship and the conservator. There is no error in connection with Probate Code section 1828, subdivision (b), shown on the record of Stulken's case.

## IV

### APPEALS OF HENDERSON AND WOODWARD

 On the record in the cases of Henderson and Woodward and based on trial counsels' assumed competence, we are satisfied counsel in each case fully communicated with Henderson and Woodward about these entire proceedings, including the contents of the investigation report. Accordingly, we conclude there is no reason to reverse the judgment in the cases of Henderson and Woodward based on the failure to transmit the investigation report to each pursuant to section 5354.

## V

### APPEAL OF STROUD

Since Stroud received a copy of the conservatorship investigation report attached to and made a part of the petition for appointment of temporary conservator and conservator of the person which was personally served on him, there is no basis for his argument concerning transmission of the investigation report to him under section 5354.

## VI

### ORDER

Each judgment is affirmed.

Wiener, Acting P. J., and Work, J., concurred.

Appellants' petitions in Nos. D003748 and D004027 for review by the Supreme Court were denied January 29, 1987.