[No. D028140. Fourth Dist., Div. One. Nov. 30, 1998.]

VICTOR TAPIA, a Minor, etc., Plaintiff and Respondent, v.
WENDY LAURIE POHLMANN, Defendant;
COUNTY OF SAN DIEGO, Claimant and Appellant.

## COUNSEL

John J. Sansone, County Counsel, Diane Bardsley, Chief Deputy County Counsel, and Kristi C. Becker, Deputy County Counsel, for Claimant and Appellant.

No appearance for Plaintiff and Respondent.

## OPINION

**KREMER, P. J.**—The County of San Diego appeals an order approving minor Victor Tapia's compromise of a disputed claim against a third party. The county contends the superior court erred in declining to order payment from Victor's compromise settlement of the full amount sought by the county for reimbursement of medical payments it made on Victor's behalf. We reverse the order.

I

### FACTUAL BACKGROUND

In September 1992 while carrying his eight-month-old cousin Alejandro Tapia, eight-year-old Victor rode his skateboard from a sidewalk into a street and collided with a vehicle driven by Wendy Laurie Pohlmann. Victor underwent hospitalization, testing, and procedures for injuries to his brain and spleen. Victor recovered "very very well" from his injuries.

The county's California Children's Services Program (Children's Services) paid most of Victor's medical bills.[1] Victor's father, Amado Tapia, agreed in writing to reimburse Children's Services for such payments in the

---

[1] Children's Services was a state-funded program administered by the county providing medical assistance to minors whose parents met specified eligibility requirements. (Health & Saf. Code, § 123800 et seq.)

event of receipt of money from "insurance, a lawsuit, a public drive or any other source." (Health & Saf. Code, § 123872.)[2]

Although actually billing the county for $71,076.49 in health care services furnished to Victor, the providers of those services agreed to reduce such sum to $47,985.67. Meanwhile, Amado retained counsel to seek recovery from the driver of the motor vehicle that had collided with Victor. The county notified Amado of its $47,985.67 lien. (Health & Saf. Code, § 123982; Gov. Code, § 23004.1.) Eventually, the driver's insurance company agreed to settle for its $25,000 policy limits. After considering Amado's attorney fees and costs, the county agreed with his counsel to reduce its lien amount to $18,568. (Gov. Code, § 23004.2; *City and County of San Francisco* v. *Sweet* (1995) 12 Cal.4th 105 [48 Cal.Rptr.2d 42, 906 P.2d 1196].)[3]

## II

### SUPERIOR COURT PROCEEDINGS

In August 1996 counsel for Amado appeared in superior court on his petition to approve Victor's $25,000 compromise settlement with the third party driver. Amado's petition alleged that $18,568 for Victor's medical expenses resulting from the collision should be paid to the county out of the proceeds of the $25,000 compromise settlement. However, apparently believing it was statutorily required to reduce the county's lien, the court took the matter under submission.

In September 1996 the superior court issued an order approving Victor's compromise but reducing, on its own motion, the payment on the county's lien from the requested amount of $18,568 to $10,000. The court's order cited Welfare and Institutions Code section 14124.78 and Probate Code section 3601.

In October 1996 the county filed a motion to set aside the order approving Victor's compromise, asserting Welfare and Institutions Code section

---

[2]Health and Safety Code section 123872 provides: "In addition to the other eligibility requirements set forth in this article, prior to being determined financially eligible for services under this article, the applicant family shall agree to repay the California Children's Services Program for any treatment services authorized by the program in an amount not to exceed the proceeds of any judgment, award, or settlement for damages as a result of a lawsuit or pursuant to an agreement relating to a California Children's Services medically eligible condition."

[3]The county had discretion to reduce its lien under Government Code section 23004.2. (*City and County of San Francisco* v. *Sweet, supra,* 12 Cal.4th at pp. 109, 121, 125.)

14124.78 applied only to reduce Medi-Cal liens, not Children's Services' liens.

In November 1996 the superior court heard and took under submission the county's motion to set aside the order approving Victor's compromise. At the hearing the court stated: "Without going into a lot of detail as to how I came about the reduction, I was trying to use some method of estimating as to what the actual medical costs were as opposed to the—I was looking for wholesale versus retail."

On January 24, 1997, the superior court denied without comment the county's motion to set aside the order approving Victor's compromise.[4] The county appeals.

## III

### DISCUSSION

 The county contends the superior court erred in awarding $10,000 instead of the requested $18,568 on its Children's Services' lien against Victor's compromise settlement with the third party driver. Characterizing its Children's Services' lien as a "first" lien under Government Code section 23004.1[5] and Health and Safety Code section

---

[4] The clerk's minutes of January 24, 1997, indicated the county's motion to set aside the order approving Victor's compromise was denied. However, the minutes also indicated: "The Court authorizes the sum of $9,545.38 to be paid to the Department of Health Services for medical expenses as ordered in the Order Approving Compromise and Order to Deposit Money filed August 16, 1996." Such entry apparently referred to an order approving the minor's compromise of Victor's cousin Alejandro, a matter not at issue in this appeal.

[5] Government Code section 23004.1 provides in relevant part:

"(a) Subject to the provisions of Section 23004.3, in any case in which the county is authorized or required by law to furnish hospital, medical, surgical, or dental care and treatment . . . to a person who is injured or suffers a disease, under circumstances creating a tort liability upon some third person to pay damages therefor, the county shall have a right to recover from said third person the reasonable value of the care and treatment so furnished or to be furnished, or shall, as to this right, be subrogated to any right or claim that the injured or diseased person, his guardian, personal representative, estate, or survivors has against such third person to the extent of the reasonable value of the care and treatment so furnished or to be furnished.

"(b) The county may, to enforce such rights, institute and prosecute legal proceedings against the third person who is liable for the injury or disease in the appropriate court, either in its own name or in the name of the injured person, his guardian, personal representative, estate, or survivors. . . . In the event that the injured person, his guardian, personal representative, estate, survivors, or either of them brings an action for damages against the third person who is liable for the injury or disease, the county's right of action shall abate during the pendency of such action, and continue as a *first lien* against any judgment recovered by

123982,[6] the county asserts the court's order reducing the requested amount was improperly based on a statute of general application involving minors' compromises (Prob. Code, § 3601)[7] and a statute applicable only to Medi-Cal liens (Welf. & Inst. Code, § 14124.78).[8] We conclude the court should have awarded the county the $18,568 requested on its lien.

Welfare and Institutions Code section 14124.78 was not applicable to the county's lien since such statute imposed limits only on the state's recovery with respect to Medi-Cal liens, a situation not present here. Further, as we

---

the injured or diseased person, his guardian, personal representative, estate, or survivors, against the third person who is liable for the injury or disease, to the extent of the reasonable value of the care and treatment so furnished or to be furnished." (Italics added.)

"Government Code section 23004.1 gives a county a *first lien* for the cost of medical care it has provided to an injured person against any judgment that person recovers from a third person who is responsible for the injury." (*City and County of San Francisco* v. *Sweet, supra,* 12 Cal.4th at p. 108, italics added, fn. omitted.)

[6]Health and Safety Code section 123982 provides: "Except as otherwise provided by law, the amount of any judgment, award, or settlement relating to a medical condition for which treatment services have been provided under the California Children's Services Program shall be subject to a claim by the state department and the designated county agency for reimbursement of the costs of the benefits provided, and to any lien filed against that judgment, award, or settlement. The department or the county designated agency, through its civil legal adviser, may, to enforce this right, institute and prosecute legal proceedings against the person who has received benefits under this article, his or her guardian, conservator, or other personal representative, or his or her estate. In the event of a judgment, award, or settlement in a suit or claim against a third person who is liable for the medical condition for which treatment services have been provided under the California Children's Services Program, the court or other agency shall *first* order paid from the judgment, award, or settlement the actual costs of the care and treatment furnished, or to be furnished, under the California Children's Services Program." (Italics added.)

[7]Probate Code section 3601 provides:

"(a) The court making the order or giving the judgment referred to in Section 3600, as a part thereof, shall make a further order authorizing and directing that such reasonable expenses (medical or otherwise and including reimbursement to a parent, guardian, or conservator), costs, and attorney's fees, as the court shall approve and allow therein, shall be paid from the money or other property to be paid or delivered for the benefit of the minor or incompetent person.

"(b) The order required by subdivision (a) may be directed to the following:

"(1) A parent of the minor, the guardian ad litem, or the guardian of the estate of the minor or the conservator of the estate of the incompetent person.

"(2) The payer of any money to be paid pursuant to the compromise, covenant, or judgment for the benefit of the minor or incompetent person."

[8]Welfare and Institutions Code section 14124.78 provides: "Except as otherwise provided in this article, notwithstanding any other provision of law, the entire amount of any settlement of the injured beneficiary's action or claim, with or without suit, is subject to the director's [State Director of Health Services] claim for reimbursement of the benefits provided and any lien filed pursuant thereto, but in no event shall the director's claim exceed one-half of the beneficiary's recovery after deducting for attorney's fees, litigation costs, and medical expenses relating to the injury paid for by the beneficiary." (See also Welf. & Inst. Code, § 14061.)

shall explain, under the circumstances here, Health and Safety Code section 123982 and Government Code section 23004.1 controlled over any conflicting language in Probate Code section 3601. As indicated, Probate Code section 3601 provided generally that from Victor's settlement with the third party driver, the court was to order payment to the county for such reasonable medical expenses incurred by the county on Victor's behalf as the court approved and allowed. (See *Goldberg* v. *Superior Court* (1994) 23 Cal.App.4th 1378 [28 Cal.Rptr.2d 613].)[9] However, under Government Code section 23004.1, the county would ordinarily have the right to recover the full amount of its lien from a settlement received by its injured debtor. (*City and County of San Francisco* v. *Sweet, supra,* 12 Cal.4th 105.)[10] Moreover, Health and Safety Code section 123982 provided that Victor's settlement

---

[9]As noted, in awarding the county a sum less than requested from Victor's compromise settlement with the third party driver, the superior court stated it was "looking for" the wholesale value of the medical costs incurred by the county on Victor's behalf instead of their retail value. However, in *Goldberg* v. *Superior Court, supra,* 23 Cal.App.4th 1378, we concluded that Probate Code section 3601 "gives the court the power to decide reasonable expenses to be paid from the settlement, *not* the reasonable value of the services rendered to the minor." (*Id.* at pp. 1379-1380, italics in original.) Further, we stated: "To authorize such a payment, the court is obliged to decide both what is reasonable *and* how much it will allow. The breadth of the [statutory] language and absence of any restrictions on the approval process suggest the court can make the determination any number of ways. Among other things, it may determine 'reasonable' from the perspective of the total settlement and 'allow' expenses by a reduction of all charges on a pro rata basis, by picking and choosing between expenses, or by some other variation. [¶] Our interpretation is bolstered by the protective role the court generally assumes in cases involving minors, a role to assure that whatever is done is in the minor's best interests. The court functions similarly in approving a minor's compromise where its primary concern is whether the compromise is sufficient to provide for the minor's injuries, care and treatment." (*Id.* at p. 1382, italics in original, fn. omitted.)

[10]In *City and County of San Francisco* v. *Sweet, supra,* 12 Cal.4th 105, the Supreme Court stated variously that the "statutory command" of Government Code section 23004.1 was "that the county lien secure the *full value of the services rendered*" (*City and County of San Francisco* v. *Sweet, supra,* at p. 108, italics added); "the legislative history of section 23004.1 suggests that our Legislature intended that a county hospital have the right to recover the *full amount* of its lien from the debtor's third party recovery" (*id.* at p. 120, italics added); ". . . the Legislature has indicated that the lien claimant, the county, recover the *full cost of the services it has provided*" (*id.* at p. 124, italics added); and ". . . the Legislature intends that county hospitals continue to have the right to collect the full amount of unpaid charges from patients who sue the person responsible for the injury for which treatment was provided. This right is not affected by the abatement and lien provisions of section 23004.1. The only statutory authorization for reduction of the debt is that found in section 23004.2, which gives the county the power to waive its claim in whole or in part if collection would result in undue hardship on the injured person" (*ibid.*).

Under the specific circumstances in *City and County of San Francisco* v. *Sweet, supra,* 12 Cal.4th 105, a case not involving a minor's compromise, in rejecting a contention that a county's lien under Government Code section 23004.1 was not "subject to equitable reduction for a portion of the attorney fees incurred by the injured party in recovering damages from the person responsible for the injury" (*City and County of San Francisco* v. *Sweet, supra,* at p. 108), the Supreme Court concluded: "Inasmuch as the intent of the Legislature appears to be that any reduction of a county lien claim for hospital treatment and related services are [*sic*]

with the third party driver—relating to his medical condition for which the county had provided treatment services under Children's Services—was subject to the county's lien for reimbursement of the costs of the benefits it provided. As noted, Health and Safety Code section 123982 also expressly provided the court was to order that the actual costs of care and treatment provided by the county be paid first from Victor's settlement with the driver.

█ Where "a general statute conflicts with a specific statute the specific statute controls the general one. [Citations.] The referent of 'general' and 'specific' is subject matter." (*People* v. *Weatherill* (1989) 215 Cal.App.3d 1569, 1577-1578 [264 Cal.Rptr. 298]; see also *Los Angeles Police Protective League* v. *City of Los Angeles* (1994) 27 Cal.App.4th 168, 178-179 [32 Cal.Rptr.2d 574]; *Yoffie* v. *Marin Hospital Dist.* (1987) 193 Cal.App.3d 743, 748 [238 Cal.Rptr. 502]; *Conservatorship of Ivey* (1986) 186 Cal.App.3d 1559, 1565 [231 Cal.Rptr. 376].[11]) █ Applying that principle here, we conclude the language in the general statute involving minors' compromises permitting reimbursement of such reasonable medical expenses as the court approves and allows (Prob. Code, § 3601) must give way to the requirement that the county be reimbursed for its actual costs under the specific statute governing provision of medical care by counties (Gov. Code, § 23004.1) and more particularly under the specific statute governing treatment services furnished under Children's Services (Health & Saf. Code, § 123982). Further, the county was also contractually entitled to receive repayment from Victor's settlement with the third party driver for any treatment services authorized by Children's Services. (Health & Saf. Code, § 123872.)

---

at the discretion of the county, the court may not order apportionment of attorney fees when the third party litigation leads to a money judgment from which the lien may be satisfied." (*Id.* at p. 125.) The Supreme Court stated it was "not free to accede to defendants' request that the trial court be given discretion to decide whether attorney fees should be apportioned in these cases. The Legislature has not provided for apportionment in every case, but instead has given *the county* the discretion to compromise or waive its claim in individual cases. When the Legislature has spoken, the court is not free to substitute its judgment as to the better policy." (*Id.* at p. 121, italics in original.) Further, the Supreme Court also noted that "defendants fail to identify an equitable principle that justifies compelling the taxpayers to provide discounted medical care to patients who subsequently become able to pay in full the cost of the medical care provided to them at a county hospital. To do so would be inconsistent with the statutory obligation to pay for medical care provided by a county hospital [citation] and might constitute an inappropriate expenditure of public funds for private purposes." (*Id.* at p. 117, fn. 9.)

[11]In *Conservatorship of Ivey, supra,* 186 Cal.App.3d 1559, the appellate court observed: "Unless repealed expressly or by necessary implication, a special statute dealing with a particular subject constitutes an exception so as to control and take precedence over a conflicting general statute on the same subject. [Citations.] This is the case regardless of whether the special provision is enacted before or after the general one [citation], and notwithstanding that the general provision, standing alone, would be broad enough to include the subject to which the more particular one relates." (*Id.* at p. 1565.)

Moreover, in any event, even if we determined the superior court had discretion under Probate Code section 3601 to set the amount of the reimbursement award to the county to be paid out of Victor's compromise settlement with the third party driver, on this record we would conclude the court acted beyond any such discretion in awarding the county less than requested. Undisputed evidence indicated that the county incurred medical expenses on Victor's behalf totaling $71,076.49, an amount far exceeding the $18,568 reimbursement requested by the county. Indeed, as noted, Victor's father through counsel acknowledged the county's entitlement to such requested amount. Further, this record did not invoke the concerns we noted in *Goldberg* v. *Superior Court, supra,* 23 Cal.App.4th at page 1382. Specifically, since it was undisputed that Victor had recovered fully from his injuries, there was little, if any, likelihood that the remainder of the settlement proceeds received by Victor after payment of the reimbursement amount requested by the county would be insufficient to provide for Victor's "injuries, care and treatment." (*Ibid.*)

In sum, since the superior court erred in declining to award the county its requested $18,568 reimbursement out of Victor's settlement with the third party driver, the order approving Victor's compromise must be reversed.

IV

DISPOSITION

The order approving minor's compromise is reversed. The superior court is directed to enter a new order including authorization of payment of $18,568 to the county. The parties shall bear their own costs on appeal.

McIntyre, J., and May, J.,* concurred.

---

*Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.