[No. C040075. Third Dist. Jan. 30, 2003.]

ARBUCKLE-COLLEGE CITY FIRE PROTECTION DISTRICT, Plaintiff and Appellant, v.
COUNTY OF COLUSA et al., Defendants and Respondents.

COUNSEL

Law Offices of William D. Ross, William D. Ross and Robert D. Pontelle for Plaintiff and Appellant.

Donald F. Stanton, County Counsel; Downey, Brand, Seymour & Rohwer, Steven P. Saxon and Michael N. Mills for Defendants and Respondents.

OPINION

SCOTLAND, P. J.—The issue in this appeal concerns a county's right to recoup administrative costs expended in the assessment, collection, and allocation of property tax revenues to a fire protection district organized under the Fire Protection District Law of 1987, also known as the Bergeson Fire District Law. (Health & Saf. Code, § 13800 et seq.) Government Code section 29142 permits a county to recoup administrative costs pursuant to an agreement between the county board of supervisors and the governing board of the fire protection district in an amount not to exceed one-quarter of one percent of all the money collected. But section 95.3 of the Revenue and Taxation Code allows a county to recoup a proportionate share of actual administrative costs, without any agreement and without limitation.

Plaintiff Arbuckle-College City Fire Protection District filed a petition for writ of mandate seeking to require defendants County of Colusa and Robert E. Kessinger, Jr., in his capacity as Auditor-Controller of Colusa County, to adhere to Government Code section 29142 and reimburse plaintiff for what it alleges were unauthorized and excess fees withheld from plaintiff since 1997. Defendants demurred on the ground that Revenue and Taxation Code section 95.3 is controlling. The trial court agreed, sustained the demurrer without leave to amend, and entered a judgment of dismissal.

For reasons that follow, we conclude that Revenue and Taxation Code section 95.3 governs a fire protection district's obligation to bear a portion of a county's administrative costs of assessing, collecting, and allocating property tax revenues. Accordingly, we shall affirm the judgment.

BACKGROUND

The relevant facts are not in dispute. Plaintiff is a fire protection district organized under the Fire Protection District Law of 1987. (Health & Saf. Code, § 13800 et seq.) As such, it is a special district entitled to share in the ad valorem property tax revenues collected by the county from property owners within the district. (Cal. Const., art. XIII A, § 1, subd. (a); Health & Saf. Code, § 13896; Rev. & Tax. Code, § 95, subd. (m).)

Health and Safety Code section 13896 requires the auditor of each county in which a fire protection district is located to allocate to the district its share of property tax revenue pursuant to chapter 6 (commencing with § 95) of part 0.5 of division 1 of the Revenue and Taxation Code. Health and Safety Code section 13899 states: "All taxes and assessments levied under this chapter shall be computed and entered on the county assessment roll and collected at the same time and in the same manner as other county taxes. When collected, the taxes and assessments shall be paid into the county treasury for the use of the district. Except as provided in Section 13854, the county may deduct its costs for this service pursuant to Section 29142 of the Government Code."

Government Code section 29142 states that when taxes or assessments are collected by the county for any special district, zone, or improvement district, the board of supervisors may provide for a collection fee for such services. "For taxes covering all purposes of such districts, other than debt service requirements on bonds, the amount of the collection fees, if any, to be charged by the county shall be fixed by agreement between the board of supervisors and the governing board of such district and shall not exceed one-fourth of 1 percent of all money collected." (Gov. Code, § 29142, subd. (b).)

In 1994, the Legislature added section 95.3 to the Revenue and Taxation Code (Stats. 1994, ch. 1167, § 6, pp. 6961-6962), which provides for the calculation of an "administrative cost apportionment factor." The factor is determined by the division of tax apportionment sums calculated for each jurisdiction or community redevelopment agency within a county by the countywide total of such amounts. (Rev. & Tax. Code, § 95.3, subd. (a).) This factor is used to calculate the proportionate share of property tax

administrative costs attributable to each jurisdiction or community redevelopment agency within the county. (Rev. & Tax. Code, § 95.3, subds. (a), (b).) Except with respect to school entities, each proportionate share of property tax administrative costs is deducted from the property tax revenue allocation of the relevant jurisdiction or redevelopment agency, and is added to the property tax revenue allocation of the county. (Rev. & Tax. Code, § 95.3, subd. (b).) These sums may be used only to fund the costs incurred by the county in assessing and collecting property taxes and allocating property tax revenues, and constitute charges for those services not to exceed the actual and reasonable costs incurred by the county in performing those services. (Rev. & Tax. Code, § 95.3, subd. (d).)

Revenue and Taxation Code section 95.3, subdivision (e), states: "It is the intent of the Legislature in enacting this section to recognize that since the adoption of Article XIII A of the California Constitution by the voters, county governments have borne an unfair and disproportionate part of the financial burden of assessing, collecting, and allocating property tax revenues for other jurisdictions and for redevelopment agencies. The Legislature finds and declares that this section is intended to fairly apportion the burden of collecting property tax revenues and is not a reallocation of property tax revenue shares or a transfer of any financial or program responsibility."

Since at least 1997, the County of Colusa defendants have used Revenue and Taxation Code section 95.3 and the administrative cost apportionment factor in determining the amount to charge plaintiff fire protection district for the assessment, collection, and allocation of property tax revenues.

Plaintiff asserts that Revenue and Taxation Code section 95.3 is inapplicable to a fire protection district organized under the Fire Protection District Law of 1987. In plaintiff's view, pursuant to Health and Safety Code section 13899 and Government Code section 29142, subdivision (b), the administrative costs chargeable to a fire protection district must be pursuant to agreement and are limited to a maximum of one-quarter of 1 percent of the revenue allocated to the district.[1]

Plaintiff filed a petition for a writ of mandate to require defendants to adhere to Health and Safety Code section 13899 and Government Code section 29142, and to reimburse plaintiff for allegedly unauthorized and excess fees withheld from it since 1997.

---

[1]The difference can be significant. For example, according to plaintiff, for tax year 1997-1998, one-quarter of 1 percent of all money collected would amount to $457.73. In contrast, for tax year 1997-1998, application of the administrative cost apportionment factor resulted in charges of $8,921.63.

Defendants demurred to the petition, arguing that Health and Safety Code section 13899 and Government Code section 29142 apply only to the collection of special taxes and assessments, and that Revenue and Taxation Code section 95.3 governs the assessment, collection, and allocation of ad valorem property taxes. The trial court agreed and sustained the demurrer without leave to amend.

## DISCUSSION

The issue presented can best be resolved by reference to the historical derivation of the applicable statutory provisions. The Fire Protection District Law of 1987 is the successor to the Fire Protection District Law of 1961, pursuant to which plaintiff was originally organized. (Health & Saf. Code, § 13803.)

At the time of the 1961 law, local governmental entities with the authority to derive revenue from property taxes proceeded in a manner independent from the actions of other taxing authorities. At that time, property taxation was budget based. Accordingly, under the 1961 law, a fire protection district would go through the statutory procedure for adopting a final budget and would report the final budget to the county board of supervisors. (Health & Saf. Code, former §§ 13902-13906; Stats. 1961, ch. 565, § 1, pp. 1696-1697.) The 1961 law provided: "The board of supervisors of each county concerned shall, at the time of levying the county taxes, levy a tax upon all the property taxable by the district lying within the county, sufficient to meet the amount set forth in the final budget submitted by the district board." (Health & Saf. Code, former § 13907; Stats. 1961, ch. 565, § 1, p. 1697.) The 1961 law also stated: "The taxes so levied shall be computed and entered on the assessment roll and collected at the same time and in the same manner as county taxes, and when collected shall be placed in the county treasury for use of the district. All laws applicable to the levy, collection and enforcement of county taxes are applicable to such taxes." (Health & Saf. Code, former § 13909; Stats. 1961, ch. 565, § 1, p. 1697.)

Laws applicable to the levy, collection, and enforcement of county taxes include certain provisions of the Government Code applicable to the government of counties. (See Gov. Code, § 29100 et seq., especially § 29102.) At the time the Fire Protection District Law of 1961 was enacted, these laws included former Government Code section 29044.2, which provided that any compensation to the county for the collection of any taxes on behalf of a special district, zone, or improvement district, except a school district, had to be fixed by agreement and could not exceed one-quarter of one percent of all

money collected. (Stats. 1955, ch. 1830, § 2, pp. 3372-3373.) That section was repealed in 1963, and its essential provisions were reenacted as Government Code section 29142, which states that "[n]otwithstanding the provisions of any other statute or code providing to the contrary," when the county collects taxes or assessments for any special district, zone, or improvement district, except a school district, it may provide for a collection fee for such services. (Stats. 1963, ch. 1209, § 2, pp. 2721-2722.) Pursuant to subdivision (b) of Government Code section 29142, for taxes covering all purposes of such districts, other than debt service requirements on bonds, the collection fee must be imposed pursuant to agreement and may not exceed one-quarter of one percent of all money collected.

Another provision applicable to the collection of taxes is Government Code section 29304, which, since 1957, provided: "Whenever any special assessment or special assessment taxes are levied upon land or real property by any city, county, district or other public corporation, officer, or body, and the same are to be collected by the county or any county officer, whether acting as a county officer or as an ex officio officer of the city, district, public corporation, officer, or body, there shall be added to the amount of the special assessment or special assessment tax an amount fixed by agreement between the county and city, district, public corporation, officer, or body for each special assessment or special assessment tax to be collected. An equal part of such charge shall be collected with each installment of such special assessment or special assessment tax and shall be deducted by the county officer collecting the tax and by him be paid into the general fund of the county." (Stats. 1957, ch. 1359, § 1, p. 2690.)

This was the state of the law until 1978 when the electorate significantly changed our system of property taxation and tax procedure by adding article XIII A to our state Constitution. (See *Amador Valley Joint Union High Sch. Dist. v. State Bd. of Equalization* (1978) 22 Cal.3d 208, 218 [149 Cal.Rptr. 239, 583 P.2d 1281].) Section 1 of that article states: "The maximum amount of any ad valorem tax on real property shall not exceed [o]ne percent (1%) of the full cash value of such property. The one percent (1%) tax [is] to be collected by the counties and apportioned according to law to the districts within the counties." (Cal. Const., art. XIII A, § 1.)

After 1978, it was no longer possible for local taxing authorities to employ budget-based taxation without regard to the taxes imposed by other taxing authorities. Rather, the 1 percent maximum tax imposed pursuant to California Constitution, article XIII A, section 1, is a limit on the total aggregate amount to be levied and apportioned by all local agencies and districts

within a county. (See *Amador Valley Joint Union High Sch. Dist. v. State Bd. of Equalization, supra,* 22 Cal.3d at p. 247.) Since 1978, counties have been required to levy the maximum 1 percent property tax on behalf of all local taxing authorities within the county. (*Id.* at p. 246.) Local taxing authorities are required to share property tax revenues pursuant to legislatively established allocation formulae. (*Ibid.*)

Following the adoption of California Constitution, article XIII A, the Legislature took immediate action to adopt implementing legislation. (See Stats. 1978, ch. 292, adopted as urgency legislation by § 40, p. 613; Stats. 1978, ch. 332, adopted as urgency legislation by § 36, p. 706.) The Legislature subsequently adopted more comprehensive legislation to implement article XIII A by adding division 1, part 0.5, to the Revenue and Taxation Code. (Stats. 1979, ch. 242, § 4, pp. 506-512; Stats. 1979, ch. 282, § 59, pp. 1025-1036.) Within that part, chapter 6, commencing with Revenue and Taxation Code section 95, deals with the allocation of property tax revenues.

As originally enacted, and until 1994, the property tax allocation provisions of the Revenue and Taxation Code did not include any provision to permit counties to recoup administrative costs associated with the burdens of assessing, collecting, and allocating property tax revenues. (See Stats. 1979, ch. 282, § 59, pp. 1025-1036.) Therefore, until 1994, the ability of counties to recoup administrative expenses was governed by the provisions of the Government Code, including Government Code section 29142.

This was the state of the law when the Fire Protection District Law of 1987 was enacted. The 1987 law was the successor to the Fire Protection District Law of 1961, and in most respects is similar to that law. However, the 1987 law recognizes the significant changes in property taxation and tax procedure brought about by the addition of article XIII A to California's Constitution. The provisions of the 1961 law for budget-based taxation were eliminated and replaced with a provision for allocation to the district of its share of property tax revenue in accordance with the allocation provisions of the Revenue and Taxation Code. (Health & Saf. Code, § 13896.) The 1987 law permitted the county to deduct the costs for this service pursuant to Government Code section 29142. (Health & Saf. Code, § 13899.)

As we have noted, when the 1987 law was enacted, there was no provision in the Revenue and Taxation Code that permitted a county to recoup its administrative expenses for the assessment, collection, and allocation of property tax revenues. Thus, when the 1987 law was enacted, there was no apparent conflict in the incorporation of both the allocation provisions of the

Revenue and Taxation Code and the cost recoupment provisions of Government Code section 29142.

In 1994, the Legislature enacted Revenue and Taxation Code section 95.3. Therein, the Legislature found that since the adoption of article XIII A of the Constitution, counties have borne an unfair and disproportionate part of the financial burden of assessing, collecting, and allocating property tax revenues. (Rev. & Tax. Code, § 95.3, subd. (e).) The Legislature expressed the intent to fairly apportion the burden of collecting property tax revenues. (*Ibid.*) Accordingly, in allocating property tax revenues to jurisdictions entitled to share in the revenues, the county calculates the proportionate share of property tax administrative costs attributable to each jurisdiction. (Rev. & Tax. Code, § 95.3, subd. (a).) With the exception of school entities, each proportionate share is deducted from the property tax allocation of the relevant jurisdiction, and is retained by the county as a charge for its services. (Rev. & Tax. Code, § 95.3, subds. (b) & (d).)

The Legislature provided that Revenue and Taxation Code section 95.3 is to apply "[n]otwithstanding any other provision of law." (Rev. & Tax. Code, § 95.3, subd. (a).)

In light of this history, and in view of the express language of the applicable statutory provisions, we cannot agree with the County of Colusa defendants that, in enacting the Fire Protection District Law of 1987, the Legislature intended Government Code section 29142 to apply to special taxes and assessments and not to apply to a district's share of countywide ad valorem property taxes.

First, Health and Safety Code section 13899 incorporates the provisions of Government Code section 29142 with respect to "[a]ll taxes and assessments levied under this chapter . . . ." Health and Safety Code section 13899 is in chapter 7 of the 1987 law. (Stats. 1987, ch. 1013, § 11, p. 3406.) Chapter 7, entitled Finance, includes only one provision that entitles fire protection districts to revenue from taxes and assessments—that being the provision in section 13896 for a district to share in countywide ad valorem property taxes. Chapter 8 of the 1987 law, entitled Alternative Revenues, deals with special taxes and assessments. (Stats. 1987, ch. 1013, § 11, pp. 3408-3410.) The reference in Health and Safety Code section 13899 to "this chapter," being chapter 7, indicates the Legislature intended it to apply to ad valorem property taxes dealt with in that chapter, rather than to the alternative revenues dealt with in chapter 8.

Second, the service charge limitation in subdivision (b) of Government Code section 29142 applies to "taxes covering all purposes of such districts."

Taxes that provide revenues that are available for all purposes of the governmental entity are general taxes and include ad valorem property taxes. (See *Santa Clara County Local Transportation Authority v. Guardino* (1995) 11 Cal.4th 220, 232 [45 Cal.Rptr.2d 207, 902 P.2d 225].) Taxes that provide revenue for a specific or limited purpose are special taxes. (*Ibid.*) Government Code section 29304, rather than Government Code section 29142, gives a county the general authority to recoup expenses for collecting special assessments and special assessment taxes. Moreover, a county's ability to recoup expenses for collecting special taxes that a fire protection district may levy is established in other, specific provisions of law. For example, Health and Safety Code section 13911 authorizes such a district to levy a voter-approved special tax pursuant to Government Code provisions commencing with section 50075. Government Code section 50077, subdivision (b), permits a county to deduct its reasonable expenses when it collects a voter-approved special tax. Likewise, Health and Safety Code section 13913 permits a fire protection district to levy a special tax for fire protection services pursuant to Government Code provisions commencing with section 53970. Government Code section 53978, subdivision (d), permits a county to deduct its reasonable expenses when it collects such taxes for a district. Because a county's entitlement to recoup expenses with respect to special taxes and assessments is governed by provisions of law other than Government Code section 29142, it appears that the incorporation of that section in Health and Safety Code section 13899 was not intended to apply to special taxes and assessments.

Finally, when the Fire Protection District Law of 1987 was enacted, there was no conflict in the incorporation of both the property tax revenue allocation provisions of the Revenue and Taxation Code and the service charge provisions of Government Code section 29142. As we have noted, in 1987, the Revenue and Taxation Code did not include provisions to permit counties to recoup administrative expenses. Therefore, in enacting the 1987 law, the Legislature incorporated the only provision of law that would permit the counties to recoup some portion of their administrative expenses. At that time, the inclusion of Health and Safety Code section 13899 in the law was for the benefit of counties rather than to shield fire protection districts from contributing to the counties' administrative costs. Nothing in the law at the time it was enacted would indicate that Health and Safety Code section 13899 was not intended to apply to ad valorem property taxes.

Defendants attempt to draw a distinction between property tax allocations, as provided for in Health and Safety Code section 13896, and the taxes and assessments "levied under this chapter," which are governed by Health and

Safety Code section 13899. They argue that tax allocations are not levied under that chapter and thus are not governed by Health and Safety Code section 13899. We agree with plaintiff fire protection district that the distinction is not significant.

As we have noted, since the addition of article XIII A to California's Constitution, governmental entities that are entitled to revenue from property taxation cannot proceed in a manner independent of other taxing entities. It has become the responsibility of a county to levy the maximum 1 percent countywide property tax on behalf of all entities within the county that are entitled to property tax revenue. (*Amador Valley Joint Union High Sch. Dist. v. State Bd. of Equalization, supra,* 22 Cal.3d at p. 246; see Rev. & Tax. Code, § 93, subd. (b).) Property tax revenues are then allocated to those entities that are entitled to share in them. (Rev. & Tax. Code, § 95.) However, a fire protection district's share of property tax revenues is still levied on its behalf, as is confirmed in Health and Safety Code section 13896. In this respect, a district's allocation of property tax revenues is "levied under this chapter" regardless of the mechanism by which that is accomplished.

For these reasons, we cannot agree with defendants that, when the Fire Protection District Law of 1987 was enacted, the Legislature intended Health and Safety Code section 13899 to apply to special taxes and assessments rather than to ad valorem property taxes. We are satisfied that, when the 1987 law was enacted, Health and Safety Code section 13899 was included for the benefit of counties in order to give them the right to recoup at least some portion of their administrative expenses in the assessment, collection, and allocation of property taxes and revenues.

But this does not end our inquiry. In 1994, the Legislature enacted Revenue and Taxation Code section 95.3 to require each jurisdiction that shares in property tax revenues, except school entities, to bear a proportionate share of the costs of assessment, collection, and allocation of those property taxes and revenues. Plaintiff is such a jurisdiction. (Rev. & Tax. Code, § 95, subds. (a) & (b).) The requirement that plaintiff bear a proportionate share of such costs conflicts with the one-quarter of 1 percent limitation of Government Code section 29142, subdivision (b), incorporated in Health and Safety Code section 13899.

Plaintiff argues that Health and Safety Code section 13899 and Government Code section 29142 are more specific than Revenue and Taxation Code section 95.3, and thus must be deemed controlling.

It is a general rule of statutory interpretation that, in the event of statutory conflict, a specific provision will control over a general provision. (*People v. Weatherill* (1989) 215 Cal.App.3d 1569, 1577-1578 [264 Cal.Rptr. 298]; see also *Tapia v. Pohlmann* (1998) 68 Cal.App.4th 1126, 1133 [81 Cal.Rptr.2d 1].) " 'The referent of "general" and "specific" is subject matter.' " (*Weatherill,* at p. 1578; see also *Tapia,* at p. 1133.) In this respect, subject matter must not be confused with the size of the class affected by the statute. (*People v. Weatherill, supra,* 215 Cal.App.3d at p. 1578, fn. 8.)

However, Health and Safety Code section 13899 and Government Code section 29142 are not necessarily more specific than Revenue and Taxation Code section 95.3. Both the allocation provisions of the Revenue and Taxation Code, which now include section 95.3, and Government Code section 29142 are incorporated into the Fire Protection District Law of 1987. (Health & Saf. Code, §§ 13896, 13899.) The limitation in subdivision (b) of Government Code section 29142 applies to "taxes covering all purposes of such districts," which would include, but not be limited to, ad valorem property taxes. On the other hand, Revenue and Taxation Code section 95.3 is specific to ad valorem property tax allocations. And as to the subject matter with which both statutes are concerned, Revenue and Taxation Code section 95.3 is perfectly specific and perfectly express. It requires each jurisdiction that shares in property tax revenue, except school entities, to bear a proportionate share of the costs.

In any event, the rule that a specific provision will control over a general provision is simply a tool for ascertaining and carrying out the intent of the Legislature. (*People v. Jenkins* (1980) 28 Cal.3d 494, 505 [170 Cal.Rptr. 1, 620 P.2d 587].) Generally, it can be presumed that when the Legislature has enacted a specific statute to deal with a particular matter, it would intend the specific statute to control over more general provisions of law that might otherwise apply. (*Ibid.*) But such a presumption may be rebutted by evidence of a contrary legislative intent. (*Id.* at pp. 505-506; see also *Miller v. Superior Court* (1999) 21 Cal.4th 883, 896 [89 Cal.Rptr.2d 834, 986 P.2d 170].) The question is always one of legislative intent, and when that intent can be ascertained then general rules of construction, including the general/specific rule, must give way. (*People v. Butler* (1996) 43 Cal.App.4th 1224, 1243 [51 Cal.Rptr.2d 150].)

In this case, we are satisfied that the Legislature intended fire protection districts to be bound by the provisions of Revenue and Taxation Code section 95.3. First, in enacting the statute in 1994, the Legislature

specified that its provisions apply "[n]otwithstanding any other provision of law." This declaration is strong evidence the Legislature intended Revenue and Taxation Code section 95.3 to apply regardless of any earlier enacted limitation upon a county's ability to recoup administrative expenses. (See *People v. Franklin* (1997) 57 Cal.App.4th 68, 73-74 [66 Cal.Rptr.2d 742]; *Thurston v. Southern Cal. Public Power Authority* (1984) 158 Cal.App.3d 236, 242 [204 Cal.Rptr. 546]; *In re Marriage of Dover* (1971) 15 Cal.App.3d 675, 678, fn. 3 [93 Cal.Rptr. 384]; *State of California v. Superior Court* (1967) 252 Cal.App.2d 637, 639 [60 Cal.Rptr. 653].)

Second, in section 95.3 of the Revenue and Taxation Code, the Legislature expressly exempted school entities from bearing a share of the county's administrative costs but otherwise provided that each jurisdiction sharing in property tax revenues must bear a proportionate share of the costs. "Under the maxim of statutory construction, *expressio unius est exclusio alterius*, if exemptions are specified in a statute, we may not imply additional exemptions unless there is a clear legislative intent to the contrary." (*Sierra Club v. State Bd. of Forestry* (1994) 7 Cal.4th 1215, 1230 [32 Cal.Rptr.2d 19, 876 P.2d 505]; *People v. Mancha* (1974) 39 Cal.App.3d 703, 713 [114 Cal.Rptr. 392].) The express exemption of school entities is strong evidence the Legislature intended that other jurisdictions, including fire protection districts, are not exempt from the administrative costs provision of Revenue and Taxation Code section 95.3.

Third, Revenue and Taxation Code section 95.3 is a remedial statute enacted on the basis of express legislative recognition that it is unfair to require county governments to bear a disproportionate part of the costs of assessing, collecting, and allocating property tax revenues. (Rev. & Tax. Code, § 95.3, subd. (e).) The statute was expressly intended to fairly apportion the cost burden. (*Ibid.*) It is a well-recognized policy of law to liberally construe remedial statutes to achieve their legislative purpose. (*CD Investment Co. v. California Ins. Guarantee Assn.* (2000) 84 Cal.App.4th 1410, 1418 [101 Cal.Rptr.2d 806]; *Kaslavage v. West Kern County Water Dist.* (1978) 84 Cal.App.3d 529, 538 [148 Cal.Rptr. 729].) To engraft exemptions into Revenue and Taxation Code section 95.3 would compel county governments to bear the exempted jurisdictions' share of the cost burden, which the Legislature has declared to be unfair and which it intended to remedy by enacting section 95.3.

Finally, when we consider the historical background of the Fire Protection District Law of 1987 (*People v. Williams* (2001) 26 Cal.4th 779, 785 [111 Cal.Rptr.2d 114, 29 P.3d 197]; *Delaney v. Baker* (1999) 20 Cal.4th 23, 29-30

[82 Cal.Rptr.2d 610, 971 P.2d 986]), it is apparent that the inclusion of Health and Safety Code section 13899 was not intended to shield fire protection districts from contributing to the costs of assessing, collecting, and allocating property tax revenues. In 1987, the Revenue and Taxation Code did not allow counties to recoup administrative costs and thus, by incorporating Government Code section 29142 into the 1987 law, the Legislature intended to benefit counties by permitting them to recover at least some portion of their costs. To conclude, as plaintiff urges, that Health and Safety Code section 13899 exempts a fire protection district from paying its share of the costs of assessing, collecting, and allocating property tax revenues would be to employ that statute in a manner not intended when it was enacted.

For these reasons, we conclude that Revenue and Taxation Code section 95.3 governs plaintiff's obligation to bear a portion of the administrative costs of assessing, collecting, and allocating property tax revenues. Our reasoning differs somewhat from that of the trial court. Nevertheless, where, as here, the litigation presents a pure question of law, the judgment of the trial court must be upheld if it is correct regardless of the theory adopted by the trial court. (*Western Mutual Ins. Co. v. Yamamoto* (1994) 29 Cal.App.4th 1474, 1481 [35 Cal.Rptr.2d 698].)

Since this litigation presents a pure question of law, it was properly resolved on demurrer. *(United Public Employees v. City of Oakland* (1994) 26 Cal.App.4th 729, 734 [31 Cal.Rptr.2d 610].)

## DISPOSITION

The judgment of dismissal is affirmed.

Davis, J., and Robie, J., concurred.

A petition for a rehearing was denied February 25, 2003, and appellant's petition for review by the Supreme Court was denied April 23, 2003.