742 P.2d 1171 (1987)
In the Matter of J.W., A.W., & B.W., Children Under the Age of 18 Alleged Deprived as Defined by the Laws of Oklahoma.
Sarah Beth ALEXANDER, Appellant,
v.
William N. PETERSON, District Attorney, Pontotoc County; Chris L. Ross, Assistant District Attorney; Oklahoma State Department of Human Services, Pontotoc County; Frank Baber, Attorney for J.W., A.W., & B.W., Appellees.
No. 66795.
Court of Appeals of Oklahoma, Division No. 3.
August 25, 1987.
Judy Lewis and Susan Work Haney, Oklahoma City, for appellant.
Chris Ross, Asst. Dist. Atty., Ada, for appellees.
Released for Publication by Order of the Court of Appeals of Oklahoma, Division No. 3.
*1172 HANSEN, Presiding Judge:
We are called upon today to decide questions arising from an order of the trial court terminating Appellant's parental rights to her minor children. These questions focus on procedural and due process requirements and arise from the trial court's failure to abide strictly by the Federal Indian Child Welfare Act (ICWA) and the procedural protections provided by the Oklahoma Juvenile Code, 10 O.S. 1985 Supp. § 1101 et seq.
10 O.S. 1985 Supp. § 40 et seq., the Oklahoma Indian Child Welfare Act, clarifies policies and procedures of this state regarding implementation of the Federal Indian Child Welfare Act, 25 U.S.C.A. § 1901 et seq. (ICWA). In order to maintain the integrity of the various Indian tribes and to protect Indian children and the concept of the extended Indian family, this Act creates precise and binding procedural protections. These protections apply to all custody proceedings involving Indian children arising under the Oklahoma Juvenile Code where termination of parental rights is an issue.
It is undisputed Appellant and her children are Chickasaw Indians. The father's rights were terminated in a separate unappealed order. The children were adjudicated deprived on December 30, 1983. That order was on a preprinted form and stated "adjudication was a result of the following conditions: Based on testimony *1173 heard by parents Court finds the respondent's (sic) are deprived." No further basis for the adjudication is contained in this order. However the order contained a preprinted list of stereotypic commands, three of which were checked off as applicable. First, Appellant was not to consume alcohol or drugs; second, she was to fully cooperate with DHS worker; Third, she was to seek and obtain employment; and, a fourth, typewritten directive, "parents were to provide a stable environment for their children."
At the dispositional hearing on February 9, 1984, the trial court placed the children in the custody of the Department of Human Services (DHS). At that time, Appellant's court appointed attorney was released. The dispositional order set out the following service plan:
Court further directs Sara Beth Alexander to do the following:
(1) Cooperate with the Department of Human Services worker, and the Chickasaw worker.
(2) Provide medical care and basic needs of the children.
(3) Attend not less than 4 hours of maritial (sic) counseling, not less than 4 hours of parenting counseling, and not less than 4 hours of alcohol counseling.
(4) Ms. Walker should move to the Ada area as soon as possible.
Although the record does not reflect the circumstances, Appellant later voluntarily placed the children with DHS because she and her husband were separated and she had no income or residence. The record does reflect that although Appellant signed the papers for voluntary foster care placement, it was not done in front of a judge as required by § 1913(a) of the ICWA. At each of several review hearings, orders similar to the February 9 order were prescribed. At no time during these proceedings was Appellant appointed counsel or advised she had that right.
On September 25, 1985 the State of Oklahoma (State) filed its petition for termination of Appellant's parental rights. No counsel was appointed for the hearing originally scheduled for November 5, 1985 and continued to December 5, 1985. On December 20, 1985 Appellant obtained independent counsel upon suggestion of the Chickasaw Nation caseworkers.
On January 30, 1986 Appellant entered into a new service plan consisting of the following:
She was ordered to:
1. Stabilize marital situation,
2. Maintain housing suitable for children,
3. Continue education and/or employment,
4. Attend Parent Counseling not less than four (4) hours a month,
5. Attend Alcoholism Counseling classes,
6. Visit children not less than once a week,
7. Pay Child Support not less than 10% of earned income, and
8. Attend to medical needs of children as required.
The hearing was then continued for three months to allow Appellant to comply with the new plan.
At the hearing on May 30, 1986, the trial court took testimony from the DHS caseworker in support of State's petition. Appellant and the caseworker from the Chickasaw Nation testified on behalf of Appellant. Their testimony as well as that of the DHS caseworker was that she had complied with the January 30th requirements except she was unemployed. She was still going to school and was in the process of seeking employment. She was also in the process of obtaining a divorce from the children's father. She had been living with another man in his house until the DHS caseworker advised her this was improper. The man moved out of his house so that she could remain there. Appellant wanted her children back.
At the conclusion, the trial court terminated Appellant's rights to her three children. She now appeals.
Appellant first argues as error that she was denied counsel during certain critical stages of the proceedings. We *1174 agree. Section 1912(b) of the ICWA states: "In any case in which the court determines indigency, the parent or Indian custodian shall have the right to court-appointed counsel in any removal, placement, or termination proceeding." State argues the review hearings between adjudication and termination are not critical stages which require appointment of counsel. We do not agree. What more critical time in such a proceeding than when a parent is attempting to meet DHS standards in order to prevent the loss of her children? The right to counsel is an element of procedural due process as well as a mandate of the ICWA. Counsel must be appointed unless knowingly and intelligently waived. The assistance of counsel is a statutory requisite under the ICWA. As such that right does not depend on a specific request.[1]
We also agree the trial court failed to provide Appellant with adequate notice of the conditions which she had to correct if termination was not to be the end result. Without knowledge of the expected norms of personal conduct with which she was expected to comply, Appellant could not be expected to conform. What does it mean to provide a stable environment? A DHS service plan is an admirable and useful means to that end. But whether a parent has complied to the letter with each dictate of that plan is not the determining factor. The question remains whether Appellant has failed to show the conditions have been corrected which led to the finding her children were deprived.[2]
Judicial clarity in the prescribed norms of parental conduct is essential to the preservation of the procedural safeguards mandated by state and federal due process. A fair warning requirement breathes life into these fundamental law guarantees, while lack of specificity makes them meaningless.[3] The State's petition alleging the children were deprived stated: "they have improper home environment, to-wit: there is no food or means to cook in the home and improper parental care, to-wit: the children are suffering from colds, head lice, impetigo, ring worms, and diarrhea." There is no mention of these conditions in the petition for termination. Indeed there was no evidence adduced at trial in reference to these conditions.
The trial court based its order terminating Appellant's parental rights on several findings, none of which addressed the ultimate question  whether the above conditions had been corrected. The trial court found termination of parental rights to be in the best interests of the children, and that the children had not bonded to their mother. Appellant has been deprived of her children for two years. If the children have been separated from their mother for such a length of time, it could not be expected that "bonding" would occur. No expert other than the DHS caseworker offered any testimony to this effect or to the children's best interests. Under these circumstances testimony of lack of bonding is not a proper basis for termination.
Appellant also argues there was no evidentiary basis under federal or state law to support the termination of Appellant's parental rights. Again we agree. The evidence did not support the finding Appellant had failed to comply with the January 30 order. To the contrary, State does not deny all but one of the commands of the service plan were met. Appellant, however, did not have a job. Again, a parent's unemployment is not a reasonable basis to terminate parental rights.
The ICWA § 1912(f) provides:
"No termination of parental rights may be ordered in such proceeding in the absence of a determination, supported by evidence beyond a reasonable doubt, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child." (Emphasis supplied.)
*1175 Although this standard creates a higher burden than that imposed by State law,[4] the public policy of this State is subservient to Acts of Congress including the ICWA.[5] The "beyond a reasonable doubt" standard must be applied in termination proceedings governed by the ICWA. Although the trial court's charge to meld the protections of the ICWA with those of the State Statutes to insure the maximum protection to parents and their children is a heavy one, it is incumbent upon the trial court to provide all constitutional and statutory protections. By failing to abide strictly by the procedural protections, a trial court is not only prejudicing the parents whose rights are in jeopardy, but prejudicing the rights and privileges of the children who are required to endure prolonged litigation before their fate is finally decided and they are permitted to go about their business of growing up.
Evidence indicates Appellant has not been a model parent. But the evidence also indicates she had tried and is trying to regain her children and abide by the standards for behavior set as acceptable by DHS.
As stated by Justice Kauger in her dissent in Case No. 62,024, In the Matter of the Adoption of Baby Boy D.,[6] "Continuing separation of Indian children from their heritage is one of the most tragic and destructive aspects of contemporary Indian life. State intrusion into Native American parent-child relationships impedes the ability of the tribe to perpetuate itself, and ultimately, it unjustifiably results in a coerced assimilation of the First Americans into a larger more homogenous society." A trial court must strictly comply with provisions of the ICWA to ensure such unnecessary separation does not occur.
For the reasons set out above, we reverse the order of termination with directions to dismiss State's petition to terminate Appellant's parental rights to her three children. The dismissal is without prejudice to further proceedings not inconsistent with the views expressed herein.
REVERSED AND REMANDED WITH DIRECTIONS.
BAILEY, J., concurs.
HUNTER, J., concurs in part, dissents in part.
NOTES
[1] In the Matter of Chad S., 580 P.2d 983 (Okla. 1978).
[2] 10 O.S. 1985 Supp. § 1130(A)(3).
[3] Matter of C.G., 637 P.2d 66 (Okla. 1981).
[4] Id. p. 71.
[5] Sand Springs Home v. State ex rel. Department of Highways, 536 P.2d 1280 (Okla. 1975).
[6] 56 O.B.J. 2669, November 11, 1985. As of this date mandate has not issued.