[No. A118968. First Dist., Div. Five. Aug. 19, 2008.]

In re DAVID H., a Person Coming Under the Juvenile Court Law.
NAPA COUNTY HEALTH AND HUMAN SERVICES, Plaintiff and
Respondent, v.
KAREN F., Defendant and Appellant.

## COUNSEL

Law Office of Gradstein & Gorman and Seth F. Gorman for Defendant and Appellant.

Robert Westmeyer, County Counsel, and Carrie R. Gallagher, Deputy County Counsel, for Plaintiff and Respondent.

## OPINION

**REARDON, J.**[*]—On June 12, 2007, the juvenile court set aside the jurisdictional and dispositional orders in this dependency case because of conceded errors in complying with the Indian Child Welfare Act of 1978 (ICWA; 25 U.S.C. § 1901 et seq.). The court then found there were exceptional circumstances to continue David H.'s detention and set new jurisdictional and dispositional hearings. On July 11, the court sustained jurisdiction and continued the minor's removal from his mother's home. In February 2008, David H. was returned to his mother's care. Consequently, certain claims initially raised by appellant are now abandoned or deemed moot. As to the balance of issues, we affirm.

---

[*]Judge of the Alameda Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

BACKGROUND

On January 7, 2007, appellant Karen F. (Mother) hit her son David (born 1999) with an electrical cord and belt 21 times.[1] David had bruises, red marks, welts, and broken skin on his arms, back and chest and he told a social worker Mother had hit him in the past. Respondent Napa County Health and Human Services (Agency) placed David in protective custody, and Mother was arrested. Mother immediately informed the Agency she was a member of the Cherokee Nation.

On January 11, 2007, the Agency filed a petition pursuant to Welfare and Institutions Code section 300, subdivision (a),[2] alleging David had suffered, or there was a serious risk he would suffer, serious physical harm inflicted nonaccidentally by Mother. The court detained David on January 11. On January 31, the Agency sent ICWA notice to three Cherokee tribes and the Bureau of Indian Affairs.

At a February 6, 2007 jurisdictional hearing, Mother submitted on the social worker's reports, waiving her right to an evidentiary hearing. The court sustained the petition, but made no ICWA findings.

After a March 14 and 15, 2007 contested disposition hearing, the court found that ICWA "does or may apply," that the Agency had made reasonable efforts to return David home and active efforts to prevent the breakup of the Indian family, that Mother had made minimal progress toward resolving the problems that led to David's removal, that by clear and convincing evidence there would be a substantial danger to David's physical health if he were returned to Mother's care, and that his return would likely cause him serious emotional or physical damage. The court continued David's removal from Mother's care and ordered reunification services for Mother, including a parenting class, an anger management class, therapy, a psychotropic medication evaluation, and a medical assessment for her menopause symptoms. The court ordered a minimum of two 2-hour visits a week between Mother and David.

Mother appealed from the disposition order. She argued there were multiple violations of ICWA in the proceedings, including inadequate notice to the Cherokee Nation of the jurisdiction and disposition hearings, lack of ICWA expert testimony, inadequate active efforts to prevent the breakup of the Indian family, failure to comply with ICWA placement preferences, and

---

[1] Some of the facts in this background section are taken from the record in *In re David H.* (Jan. 31, 2008, A117118) (nonpub. opn.). On October 30, 2007, we granted Mother's request to incorporate by reference the record in the prior appeal.

[2] All statutory references are to the Welfare and Institutions Code unless otherwise indicated.

failure to advise Mother of her ICWA rights. She also argued the court's finding of detriment that prevented David's return to Mother's home was not supported by substantial evidence under the legal standards of ICWA or California dependency law. She asked this court to reverse the jurisdictional and dispositional orders and remand for new jurisdictional and dispositional hearings.

Meanwhile, on May 8, 2007, in the juvenile court, the Agency filed a number of documents regarding its contacts with the Cherokee Nation and David's status as an Indian child. In a letter dated January 24, the Cherokee Nation (Tribe) informed the Agency that David was an Indian child because Mother was a member of the Tribe. The letter was mailed to the Agency's correct address but was written to the attention of a former director of the Agency and apparently was never received by the social worker assigned to David's case. On March 16, the social worker received a telephone message from the Tribe's ICWA representative, Nicole Allison, requesting information about the case. The social worker did not follow up nor did she pass on the message to the social worker who took over David's case. Allison, the social worker, her supervisor, and deputy county counsel exchanged phone messages until Allison at last made contact with the social worker and deputy county counsel on May 2. Allison then sent deputy county counsel a copy of the January 24 letter by facsimile transmission, confirming David's status as an Indian child. The Tribe formally intervened in the dependency proceeding on May 15.

On June 1, 2007,[3] the Agency moved the juvenile court to set aside the jurisdictional and dispositional orders, advise Mother of her ICWA rights, and set a new jurisdictional and dispositional hearing on July 9. In an attached declaration, county counsel acknowledged the Agency had not given the Cherokee Nation 10 days' notice of the jurisdictional and dispositional hearings or any notice of the contested dispositional hearing, had not advised Mother of her ICWA rights, and had not provided ICWA expert testimony at the dispositional hearing.

A hearing on the Agency's June 1, 2007 motion took place on June 12. At the outset of the hearing, Mother made a *Marsden*[4] motion seeking substitution of appointed counsel. Mother's attorney agreed that her relationship with

---

[3] Initially, on May 14, 2007, the Agency filed a section 388 petition seeking a modification of the dispositional order. The Agency asked the court to find that ICWA applies to the case and to hold a special hearing to take ICWA expert testimony and modify the findings in the order. The court granted the petition on May 17 and set the hearing for July 9. The court's May 17 order, however, was superseded by the court's June 12 order (discussed below) that set aside both the jurisdictional and dispositional orders and scheduled new jurisdictional and dispositional hearings for July 9.

[4] *People v. Marsden* (1970) 2 Cal.3d 118 [84 Cal.Rptr. 156, 465 P.2d 44].

Mother had irretrievably broken down since the first appeal was filed. The court granted the motion and appointed Daniel Chester as Mother's new attorney. Chester was not present at the hearing and was not informed of his appointment until the next day.

The court then proceeded to make a number of rulings at the hearing. The court found that David was an Indian child and that ICWA applied to the case. The court advised Mother of her rights under ICWA, and Mother affirmatively stated that she did not wish to waive any of her ICWA rights. The court granted the Agency's June 1 motion, set aside the jurisdictional and dispositional orders, and scheduled new jurisdictional and dispositional hearings for July 9. The court also found that exceptional circumstances existed to justify holding the dispositional hearing more than 60 days from the date David was first detained and extraordinary circumstances existed to justify temporary emergency custody of David for more than 90 days following his initial removal. Finally, the court scheduled a June 19 hearing on the question of whether Allison could testify as an expert on Cherokee customs and practices by telephone at the July 9 hearing.

Chester did not appear at the June 19, 2007 hearing, and apparently had not been notified of the hearing. Over Mother's objections, the court granted the Agency's request to have Allison testify by telephone.

In a June 20, 2007 letter, Chester requested a continuance of the July 9 hearing due to preexisting vacation plans. Chester was leaving on vacation June 29 and would not be returning to work until July 11. The court continued the hearing to July 13.

On June 21, 2007, the Agency requested a June 26 hearing to discuss the availability of its ICWA expert. At the June 26 hearing, deputy county counsel said the July 13 hearing date had to be changed for two reasons: first, the Agency's ICWA expert was not available on that date, and second, the six-month deadline to hold the dispositional hearing under section 352, subdivision (b) would expire on July 11.[5] Chester then asked that the case be dismissed with David returned to Mother's custody. "There is no way we can have a hearing between now and July 11th." Because of his vacation schedule, "I don't see how we can go forward at this point without severely prejudicing her right to be represented by counsel of her choosing. She's very happy with me as her attorney, but there is no way I can do it before I return from vacation." Even if the court appointed different counsel for Mother,

---

[5] Section 352, subdivision (b) provides, "In no event shall the court grant continuances that would cause the hearing pursuant to Section 361 to be completed more than six months after the hearing pursuant to Section 319." The section 319 hearing is the initial detention hearing, which in this case took place on January 11, 2007.

Chester argued, no attorney could prepare for the hearing in just two weeks. Chester agreed there was no flexibility in the July 11 deadline and argued the only remedy was dismissal.

The court set the hearing to commence on July 11, 2007, with the understanding the hearing might continue into other dates. Chester asked the court to schedule a hearing on June 28 so he could request appointment of counsel to file a writ petition to prevent the hearing from proceeding. The court set the hearing and asked the parties to brief the issue of whether July 11 was an absolute deadline and, if so, what were the consequences of not meeting that deadline.

At the June 28 hearing, the court first heard argument and testimony on the Agency's application for a temporary restraining order against Mother. The Agency told the court Mother had gone to David's foster home, banged on the doors and windows, and yelled for David to come out. The court denied the restraining order because of insufficient evidence but admonished Mother not to go to David's placement unannounced.

On the issue of the date of the jurisdictional and dispositional order, the parties told the court the statute clearly required the hearing to be completed, and not just commenced, by July 11. Chester renewed his request for dismissal of the case. He also asked to be relieved as counsel because he could not prepare for the hearing by July 11, and he added that in any event the relationship between him and Mother had broken down to the point that he could no longer represent her. Alternatively, David could be returned to Mother's care and the hearing postponed. The court relieved Chester of his representation of Mother. During the hearing, the court contacted another attorney, Jeffrey Hammond, who said he could prepare for the case in the two weeks before the July 11 hearing. The court appointed him to represent Mother and ordered Mother to go to his office that day to avoid further delays.

The jurisdictional and dispositional hearing took place on July 11, 2007. The court heard testimony from Mother's therapist, David's principal, the social workers who had worked on the case, an ICWA expert retained by the Agency, Allison, Mother's anger management counselor, and Mother. The court sustained the petition and declared David a dependent child, finding that the Agency had made reasonable efforts to return David home and active efforts to prevent the breakup of the Indian family, which were unsuccessful, that Mother had made minimal progress toward resolving the problems that had led to David's removal; and that by clear and convincing evidence there would be a substantial danger to David's physical health if he were returned to Mother's care and that it was likely his return would cause him serious

emotional or physical damage. The court ordered reunification services for Mother, including a parenting class, therapy, anger management classes, psychotropic medication evaluation, a medical assessment for menopause symptoms, a psychological evaluation, and family therapy. The court ordered two 3-hour visits a week between Mother and David.

Mother appealed on July 26, 2007. On January 31, 2008, we dismissed Mother's appeal of the original disposition order (*In re David H., supra,* A117118) as moot in light of the juvenile court's June 12, 2007 ruling setting aside that order and scheduling a new jurisdictional and dispositional hearing. On April 9, 2008, in response to this court's request for an update on the status of the dependency case, the parties informed us that David had been returned to Mother's care in February 2008. We then asked the parties to brief whether any of the issues raised in this appeal had been rendered moot by this development. We address those arguments below.

DISCUSSION

We review questions of law de novo and factual findings for substantial evidence. (*Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 800–801 [35 Cal.Rptr.2d 418, 883 P.2d 960]; *Winograd v. American Broadcasting Co.* (1998) 68 Cal.App.4th 624, 632 [80 Cal.Rptr.2d 378].) "In juvenile cases, as in other areas of the law, the power of an appellate court asked to assess the sufficiency of the evidence begins and ends with a determination as to whether or not there is any substantial evidence, whether or not contradicted, which will support the conclusion of the trier of fact. All conflicts must be resolved in favor of the respondent and all legitimate inferences indulged in to uphold the verdict, if possible. Where there is more than one inference which can reasonably be deduced from the facts, the appellate court is without power to substitute its deductions for those of the trier of fact." (*In re Katrina C.* (1988) 201 Cal.App.3d 540, 547 [247 Cal.Rptr. 784].)

I. *Detention Pending New Jurisdictional and Dispositional Hearings*[6]

In her briefs on the merits, Mother argued the court erred when, on June 12, 2007, it extended David's detention until new jurisdictional and dispositional hearings could be held. She argued the court erred by finding there were exceptional circumstances justifying detention beyond a 90-day period under ICWA. (See Cal. Rules of Court, rule 5.664(c)(1)(B), eff. Jan. 1, 2007, and repealed eff. Jan. 1, 2008;[7] 25 U.S.C. § 1922; Bur. of Indian Affairs, Guidelines

---

[6] Mother expressly abandons any argument that the proper remedy for the ICWA violations in the first five months of the dependency proceeding was dismissal of the action rather than setting aside the original orders and holding new jurisdictional and dispositional hearings.

[7] All rule references are to the California Rules of Court.

for State Courts; Indian Child Custody Proceedings (44 Fed.Reg. 67584–67595) (Nov. 26, 1979) § B.7(c) at p. 67589.)

In her supplemental brief on mootness, however, Mother concedes that her challenge to the detention order is moot. She urges us to exercise our discretion to decide the issue because it is an important issue of public interest and is capable of repetition yet evading review. (See *In re Raymond G.* (1991) 230 Cal.App.3d 964, 967 [281 Cal.Rptr. 625].) We decline to do so.[8]

## II. *Lack of Representation at the June 12 and June 19 Hearings*

Mother contends the court's proceeding with the June 12 and June 19 hearings, despite her lack of counsel, violated her constitutional and statutory rights. We review this alleged error to determine if it was harmless beyond a reasonable doubt.[9]

Mother first argues she was denied representation at the June 12, 2007 hearing, when the court extended David's detention until July 9 even though it had already relieved Mother's attorney of representation and it knew Mother's newly appointed attorney was not present. Assuming that Mother's lack of representation at this hearing was a violation of Mother's rights, we

---

[8] Regarding Mother's remaining arguments on appeal, she correctly observes that errors prejudicially affecting the jurisdictional hearing would require either remand for a new jurisdictional hearing or dismissal of the proceeding for lack of jurisdiction. Thus, her remaining arguments (all of which affect the jurisdictional hearing) have not been rendered moot by subsequent proceedings.

[9] A parent may have a constitutional due process right to representation at a hearing that may result in the termination of reunification services and the setting of a section 366.26 hearing. (*In re Arturo A.* (1992) 8 Cal.App.4th 229, 239 [10 Cal.Rptr.2d 131]; *In re Andrew S.* (1994) 27 Cal.App.4th 541, 548 [32 Cal.Rptr.2d 670].) Denial of this constitutional right to representation is reversible error unless it is harmless beyond a reasonable doubt. (*In re Andrew S.*, at p. 549.) A parent has a statutory right to representation in these proceedings. (§ 317, subds. (b), (d).) A violation of a parent's statutory right to representation is reviewed for harmless error under the standard of *People v. Watson*: the parent must show there was a reasonable probability of a more favorable outcome if she had been represented at the hearing. (*In re Andrew S.*, at p. 549; *People v. Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].) Mother concedes: "[I]n non-ICWA cases, failure to appoint counsel is not per se reversible error." ICWA requires the appointment of counsel for a parent of an Indian child "in any removal, placement, or termination proceeding." (25 U.S.C. § 1912(b).) However, Mother has failed to cite any case that would support a reversible per se standard for an ICWA violation under circumstances such as those presented here. (See *Matter of M.E.M.* (1981) 195 Mont. 329 [635 P.2d 1313, 1317] [reversing for new hearing where much of testimony would have been excluded had a proper objection been made]; *Matter of G.L.O.C.* (1983) 205 Mont. 352 [668 P.2d 235, 238] [reversing where lack of representation and failure to hold hearing constituted due process violation]; *Matter of J.W.* (1987) 1987 OKCIVAPP 60 [742 P.2d 1171, 1173–1174, 1175] [reversing for cumulative error, which included denial of representation]; *In re Desiree F.* (2000) 83 Cal.App.4th 460, 476–478 [99 Cal.Rptr.2d 688] [same].) Thus, we apply the next most exacting standard of review.

have already explained that Mother's challenges to the detention order are moot and will not be reviewed in this appeal.

Mother also argues she was denied representation at the June 19, 2007 hearing, when the court granted Allison permission to testify by telephone at the jurisdictional and dispositional hearing. Any error in Mother's lack of representation at this hearing was harmless beyond a reasonable doubt. Mother was represented at all subsequent hearings and her attorney could have, but did not, object to Allison's telephonic appearance. Moreover, Allison's testimony was limited and generally favorable to Mother. Her only unfavorable recommendation—against David's immediate return to Mother's care—was not reasonably subject to attack by in-person cross-examination.

### III. *Denial of Continuance of the Jurisdictional and Dispositional Hearing*

Mother argues the court erred by denying counsel's request for a continuance of the jurisdictional and dispositional hearing to a date later than July 11, 2007. She argues that by setting the hearing on July 11, the court abused its discretion under section 352,[10] violated her rights under ICWA,[11] and impaired her right to effective assistance of counsel (§ 317.5, subd. (a)).

■ The court did not abuse its discretion under section 352. Continuances in juvenile dependency proceedings are disfavored, particularly when they infringe on maximum time limits under the code. (§ 352, subds. (a), (b); *In re Elijah V.* (2005) 127 Cal.App.4th 576, 585 [25 Cal.Rptr.3d 774].) The detention hearing took place on January 11, 2007. Therefore, the disposition hearing had to be held by July 11. Chester insisted below that the court had no discretion to hold the hearing after July 11. The court ensured that Mother would be represented by counsel who would have adequate time to prepare for the hearing by July 11.

---

[10] Section 352 provides, "(a) Upon request of counsel for the parent, guardian, minor, or petitioner, the court may continue any hearing under this chapter beyond the time limit within which the hearing is otherwise required to be held, provided that no continuance shall be granted that is contrary to the interest of the minor. In considering the minor's interests, the court shall give substantial weight to a minor's need for prompt resolution of his or her custody status, the need to provide children with stable environments, and the damage to a minor of prolonged temporary placements. [¶] . . . [¶] (b) . . . In no event shall the court grant continuances that would cause the hearing pursuant to Section 361 to be completed more than six months after the hearing pursuant to Section 319."

[11] ICWA provides, "No foster care placement or termination of parental rights proceeding shall be held until at least ten days after receipt of notice by the parent or Indian custodian and the tribe or the Secretary: *Provided*, That the parent or Indian custodian or the tribe shall, upon request, be granted up to twenty additional days to prepare for such proceeding." (25 U.S.C. § 1912(a).)

Mother also argues the juvenile court should have granted Chester's request for a continuance because parents in ICWA cases have an automatic right to a 20-day continuance of a jurisdictional hearing. We disagree. First, Chester never made a request for an extension of time under ICWA. Therefore, the court never had an opportunity to consider a possible conflict between the requirements of ICWA and the six-month deadline in section 352, subdivision (b). We consider the argument forfeited. Second, Mother received actual notice of the proceeding in early January, actual notice of the Agency's request for a new jurisdictional hearing in May, and notice that the juvenile court agreed to reschedule the hearing on June 12. The hearing was held on July 11—29 days later. The difference between the 29 days she received to prepare for the hearing and the 30 days she might have been entitled to receive under ICWA (assuming the date ran from June 12 and not an earlier date) was nonprejudicial.

The court did not infringe on Mother's right to effective assistance of counsel. Chester had unusual personal circumstances that prevented him preparing for the hearing by July 11. He first learned of the necessity of holding the hearing by July 11 on June 25. His last day at work before his vacation was June 28, and his first day back would have been July 11. His prior work on the case had been limited to talking to Mother and Allison, starting research on ICWA law, responding to the request for a temporary restraining order, and addressing the scheduling issues mentioned above. He still had substantial work to do to prepare for the hearing and only about one day to do that work. Hammond, on the other hand, had two weeks to prepare for the hearing. Mother has not shown that two weeks was an insufficient time to prepare, and the record on appeal does not support such a finding. The record demonstrates that Hammond vigorously represented Mother's interests at the July 11 hearing and was familiar with the details of the case. Moreover, Chester represented on June 28 that his relationship with Mother had broken down for reasons he could not expressly put on the record. Mother did not object to this representation. Therefore, it does not appear that Mother was prejudiced by the change in counsel.

## IV. *Facial Sufficiency of Petition*

Mother challenges the facial sufficiency of the petition, arguing it failed to allege that David faced a substantial risk of serious physical harm at the time of the July 11, 2007 hearing. For three reasons, her argument lacks merit.

## A. *Forfeiture*

First, Mother forfeited her argument by failing to raise it below.[12] Although Mother argued at the July 11, 2007 hearing that the Agency should have prepared a new jurisdictional report with updated information about the risk of harm to David and that the Agency failed to demonstrate a current risk of harm at the hearing, those arguments addressed the sufficiency of the evidence produced in support of jurisdiction, not the sufficiency of the allegations in the petition. Mother never specifically challenged the sufficiency of those allegations.

There is currently a split in authority about whether a challenge to the sufficiency of a juvenile dependency petition is forfeited if it was not raised in the juvenile court. In *In re Alysha S.*, the Third District observed that in civil actions an argument that a pleading fails to state a cause of action is not subject to forfeiture on this ground (Code Civ. Proc., § 430.80, subd. (a)), and concluded, without analysis, "The same rule obtains herein." (*In re Alysha S.* (1996) 51 Cal.App.4th 393, 397 [58 Cal.Rptr.2d 494].) Two years later, the Sixth District expressly disagreed with *In re Alysha S.* on two grounds. (*In re Shelley J.* (1998) 68 Cal.App.4th 322, 328–329 [79 Cal.Rptr.2d 922].) First, the court cited *In re Jennifer R.*, which held, "Dependency proceedings in the juvenile court are special proceedings governed by their own rules and statutes. [Citations.] Unless otherwise specified, the requirements of the Civil Code and the Code of Civil Procedure do not apply. (*Jones T. v. Superior Court* (1989) 215 Cal.App.3d 240, 245, fn. 3 [264 Cal.Rptr. 4]; *In re Angela R.* (1989) 212 Cal.App.3d 257, 273 [260 Cal.Rptr. 612]." (*In re Jennifer R.* (1993) 14 Cal.App.4th 704, 711 [17 Cal.Rptr.2d 759], fn. omitted, quoted in *In re Shelley J.*, at p. 328.) Second, the court cited former rule 39, which provided that rules governing criminal cases and appeals applied to juvenile proceedings unless otherwise specified, and Penal Code section 1012, which provides that failure to demur to defective pleadings waives the defect. (*In re Shelley J.*, at p. 328.) The Second District, Division Five, has agreed with *In re Shelley J.* and provided an additional reason for the forfeiture rule. (*In re James C.* (2002) 104 Cal.App.4th 470, 481 [128 Cal.Rptr.2d 270].) After agreeing with *In re Shelley J.*'s reliance on *In re Jennifer R.*, former rule 39, and Penal Code section 1012, the court in *In re James C.* cited section 348, which provides that one specific chapter of the Code of Civil Procedure relating to variances and amendments of pleadings applies to juvenile dependency proceedings. (*In re James C.*, at p. 481.) The court stated that the fact

---

[12] The Agency argues more generally that Mother forfeited her challenge to jurisdiction because she failed to challenge jurisdiction during the July 11, 2007 hearing. Mother arguably preserved a challenge to the sufficiency of the evidence of jurisdiction by arguing there was no substantial evidence of a current substantial risk of harm to David (which was also relevant to David's continued removal).

that the incorporated chapter does not include Code of Civil Procedure section 430.80, cited in *In re Alysha S.*, supports the conclusion that section 430.80 is inapplicable to juvenile dependency proceedings and that challenges to the sufficiency of a dependency petition are subject to forfeiture. The Fourth District has also followed *In re Shelley J., supra*, 68 Cal.App.4th 322, citing practical reasons for enforcing forfeiture. (*In re S. O.* (2002) 103 Cal.App.4th 453, 459–460 [126 Cal.Rptr.2d 554]; *In re Jessica C.* (2001) 93 Cal.App.4th 1027, 1038, fn. 8 [113 Cal.Rptr.2d 597].)

We agree with the holdings of *In re Shelley J., supra*, 68 Cal.App.4th 322, *In re James C., supra*, 104 Cal.App.4th 470, and *In re S. O., supra*, 103 Cal.App.4th 453, although the reasoning of the cases requires updating. First, former rule 39 has been repealed. (Historical note, Deering's Ann. Rules of Court (2006 supp.) foll. rule 39, p. 56 [former rule 39 repealed eff. Jan. 1, 2005].) The current version of the rule does not contain the language cited in *In re Shelley J.* and *In re James C.* (Rule 8.400; see historical note, 2 Deering's Ann. Rules of Court (2007 ed.) foll. rule 8.400, p. 536 [originally adopted as rule 37 eff. Jan. 1, 2005]; Advisory Com. com., Deering's Ann. Rules of Court (2006 supp.) foll. rule 37, p. 35 [rule 37 principally restated subds. (a)–(b) & (e)–(g) of former rule 39]; Deering's Ann. Rules of Court, rule 39, subd. (a) (2004 ed.) p. 430 [containing language cited in *In re Shelley J., supra*, 68 Cal.App.4th at p. 328, and *In re James C., supra*, 104 Cal.App.4th at p. 481].)

Second, the holding in *In re Jennifer R., supra*, 14 Cal.App.4th at page 711—that the Civil Code and the Code of Civil Procedure do not apply to juvenile dependency proceedings unless specifically made applicable—has been rejected as an overstatement. In *In re Claudia E.*, the Fourth District, Division One (which decided both *In re Jennifer R.*, and a case relied on therein, *In re Angela R., supra*, 212 Cal.App.3d 257) recently reconsidered the issue. (*In re Claudia E.* (2008) 163 Cal.App.4th 627 [77 Cal.Rptr.3d 722].) The court concluded: "[T]he better view is that application of a statute outside the Welfare and Institutions Code (and not expressly made applicable) is *not* necessarily barred from dependency proceedings. Courts should determine whether the statute at issue is consistent with the overall purposes of the dependency system." (*Id.* at p. 636.) The court distinguished or narrowly construed its earlier decisions. (*Id.*, at pp. 636–637.)[13] The court also distinguished an intervening Supreme Court case, which had held:

---

[13] The other case cited in *In re Jennifer R., supra*, 93 Cal.App.4th at page 711, *Jones T. v. Superior Court*, held that Civil Code former section 4600 "no longer applies to dependency proceedings" because the Legislature had enacted "a specific statutory scheme for the care, custody, control and placement of dependent children." (*Jones T. v. Superior Court, supra*, 215 Cal.App.3d at p. 245, fn. 3.) That is, *Jones T.* essentially applied the principle that specific statutes prevail over more general statutes. (See *Arbuckle-College City Fire Protection Dist. v. County of Colusa* (2003) 105 Cal.App.4th 1155, 1166 [130 Cal.Rptr.2d 182].) *Jones T.* did not

"Dependency proceedings in the juvenile court are special proceedings with their own set of rules, governed, in general, by the Welfare and Institutions Code." (*In re Chantal S.* (1996) 13 Cal.4th 196, 200 [51 Cal.Rptr.2d 866, 913 P.2d 1075], quoted in *In re Claudia E.*, at pp. 634–635.) The court explained: "[T]he observation in *Chantal S.* . . . that dependency proceedings are governed by the Welfare and Institutions Code was expressly a *general* one, and the high court held only that a particular statute—Family Code section 3190—did not apply in dependency cases." (*In re Claudia E.*, at p. 636.) The Supreme Court found that application of the particular statute would produce results inconsistent with the purposes of dependency law. (*Ibid.* [parenthetical to citation of *In re Chantal S.*, at p. 207].)

The Third District also has rejected the broad holding in *In re Jennifer R.* (*In re Mark B.* (2007) 149 Cal.App.4th 61, 78–79 [56 Cal.Rptr.3d 697].) Like the Fourth District, the Third District concluded that *In re Chantal S., supra,* 13 Cal.4th 196, merely stated a general rule and "did not hold that provisions of other codes are inapplicable unless otherwise specified." (*In re Mark B.*, at p. 78.) *In re Mark B.* specifically holds that the provisions of part 1 of the Code of Civil Procedure ("Of Courts and Justice") apply in juvenile dependency proceedings because they "provide for the fundamental empowerment of the courts, including the juvenile court." (*In re Mark B.*, at p. 78.) The court distinguished *In re Chantal S., In re Jennifer R., supra,* 14 Cal.App.4th 708, and *In re Angela R., supra,* 212 Cal.App.3d 257, because the statutes held inapplicable in those cases were from different parts of the Code of Civil Procedure. (*In re Mark B.*, at p. 78.) In *In re Angela R.*, for example, the statute at issue applied to civil "actions" governed by part 2 of the Code of Civil Procedure, whereas juvenile dependency cases are "special proceedings" governed by part 3 of the code. (*In re Mark B.*, at p. 78; *In re Angela R.*, at p. 273; see also *In re Chantal S.*, at p. 200 ["Dependency proceedings in the juvenile court are *special proceedings* with their own set of rules . . . ." (Italics added.)].)

■ We agree that a statute outside the Welfare and Institutions Code (that is not explicitly made *inapplicable* to dependency cases) applies in a dependency case if the statute applies to special proceedings such as juvenile dependency cases and if it is consistent with the overall purposes of the juvenile dependency system.

■ Applying this updated rationale, we conclude that Code of Civil Procedure section 430.80—which provides that challenges to the facial sufficiency of a petition are not forfeited by the party's failure to raise the issue in the trial court—does not apply to juvenile dependency proceedings.

hold that the Civil Code was inapplicable to dependency proceedings unless expressly made applicable by the Welfare and Institutions Code or juvenile court rules.

First, section 430.80 appears in part 2 of the Code of Civil Procedure, which applies to civil actions, not in part 3, which applies to special proceedings. Thus, it does not even apply to juvenile dependency proceedings by its own terms. Moreover, the Welfare and Institutions Code expressly incorporates one chapter of part 2 of the Code of Civil Procedure (ch. 8 of tit. 6 of pt. 2) and does not expressly incorporate Code of Civil Procedure section 430.80 or the chapter in which it appears, chapter 3 of title 6 of part 2. (§ 348; *In re James C., supra*, 104 Cal.App.4th at p. 481.) This omission supports our conclusion that section 430.80 does not apply to dependency proceedings.

Second, the statute is inconsistent with the purposes of juvenile dependency law. Allowing parties to challenge the facial sufficiency of a petition for the first time on appeal conflicts with the emphasis on expeditious processing of these cases so that children can achieve permanence and stability without unnecessary delay if reunification efforts fail. (See *In re Marilyn H.* (1993) 5 Cal.4th 295, 307 [19 Cal.Rptr.2d 544, 851 P.2d 826].) Enforcing the forfeiture rule requires parties to raise such issues in the juvenile court where they can be promptly remedied without undue prejudice to the interests of any of the parties involved. (See *In re S. O., supra*, 103 Cal.App.4th at pp. 459–460; *In re Jessica C., supra*, 93 Cal.App.4th at pp. 1038, fn. 8, 1041–1042.)

■ Had Mother raised her objection to the sufficiency of the petition at the July 11, 2007 hearing, the court could have allowed the Agency to amend the petition to conform to the proof offered at the hearing. (§ 348; Code Civ. Proc., §§ 469, 470.) "[A]mendments to conform to proof are favored, and should not be denied unless the pleading as drafted prior to the proposed amendment would have misled the adversarial party to its prejudice." (*In re Jessica C., supra*, 93 Cal.App.4th at p. 1042 [applying § 348].) ■ Only if the variance between the petition and the proof offered at the jurisdictional hearing is so great that the parent is denied constitutionally adequate notice of the allegations against him or her should a juvenile court properly refuse to allow an amendment to conform to proof or should a reviewing court entertain a challenge to the sufficiency of the petition that was not raised below. (*In re Jessica C.*, at pp. 1041–1042; *In re Shelley J., supra*, 68 Cal.App.4th at pp. 328–329; see also *In re Athena P.* (2002) 103 Cal.App.4th 617, 627–628 [127 Cal.Rptr.2d 46] [holding that in the absence of prejudicially inadequate notice of the allegations against her, the facial insufficiency of the petition is harmless error if the evidence presented at the hearing establishes jurisdiction].) This was not such a case.

Accordingly, we hold that Code of Civil Procedure section 430.80 does not apply and Mother forfeited her challenge to the facial sufficiency of the petition by failing to raise the issue below.

## B. *Past Infliction of Serious Physical Harm Is Sufficient*

■ Second, the allegation that David *had suffered* serious physical harm inflicted nonaccidentally by Mother was sufficient to establish jurisdiction. The plain language of section 300, subdivision (a) provides that a child is within the jurisdiction of the juvenile court if he "has suffered . . . serious physical harm inflicted nonaccidentally upon the child by the child's parent or guardian."

Mother cites cases suggesting that jurisdiction can only be established if the social services agency proves the child faces a substantial risk of harm at the time of the jurisdictional hearing. *In re Rocco M.*, for example, held, "While evidence of past conduct may be probative of current conditions, the question under section 300 is whether circumstances *at the time of the hearing* subject the minor to the defined risk of harm. [Citations.]" (*In re Rocco M.* (1991) 1 Cal.App.4th 814, 824 [2 Cal.Rptr.2d 429].) We find each of Mother's cited cases distinguishable.

In *In re Rocco M.*, jurisdiction was alleged under section 300, subdivision (b), which applies where the child " 'has suffered, or there is a substantial risk that the minor will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the minor, or the willful or negligent failure of the minor's parent or guardian to adequately supervise or protect the minor from the conduct of the custodian with whom the minor has been left, or by the wilful or negligent failure of the parent or guardian to provide the minor with adequate food, clothing, shelter, or medical treatment, or by the inability of the parent or guardian to provide regular care for the minor due to the parent's or guardian's mental illness, developmental disability, or substance abuse.' " (*In re Rocco M., supra*, 1 Cal.App.4th at p. 820, fn. 4.) The petition had alleged that the mother had left Rocco in the care of a relative who was arrested for possession of heroin and methamphetamines; the mother left Rocco in the care of a friend who kicked him in the stomach; the mother had a history of drug and alcohol abuse that interfered with her ability to provide for and supervise Rocco; and Rocco had previously been removed from the mother's care for three years due to her neglect of his basic needs. (*Id.* at p. 817.) After reviewing the legislative history of 1987 amendments to section 300, *In re Rocco M.* held: "Subdivision (b) means what it says. Before courts and agencies can exert jurisdiction under section 300, subdivision (b), there must be evidence indicating that the child is exposed to a *substantial* risk of *serious physical* harm or illness" and, as quoted above, that "the question under section 300 is whether circumstances *at the time of the hearing* subject

the minor to the defined risk of harm." (1 Cal.App.4th at pp. 823–824.)[14] The court specifically noted that section 300, subdivision (a) uses similar language and relied on it as a source of guidance for interpreting subdivision (b). (1 Cal.App.4th at pp. 823–824.)

Despite these broadly worded statements, *In re Rocco M.* did not specifically address whether an allegation (or evidence) that a child "has suffered . . . serious physical harm" under the circumstances set forth in section 300, subdivision (b) would have been sufficient alone to establish jurisdiction. We do not read the case as holding that such an allegation (or such evidence) would not be sufficient to establish jurisdiction. It is true that an incident of prior physical abuse was alleged in *In re Rocco M.* and that the court seriously questioned whether the "one instance of physical abuse by a caretaker" was sufficient to establish jurisdiction. (*In re Rocco M., supra,* 1 Cal.App.4th at p. 825.) However, the court explained that, as to that incident, there was no evidence the mother should have anticipated that Rocco might be physically abused by the caretaker. (*Ibid.*) That is, there was no evidence that Rocco "ha[d] suffered . . . serious physical harm or illness, *as a result of* . . . the *willful or negligent* failure of the child's parent or guardian to adequately supervise or protect the child from the conduct of the custodian with whom the child has been left," as required by section 300, subdivision (b). (Italics added.) Here, the petition alleged that David "ha[d] suffered . . . serious physical harm inflicted nonaccidentally" by Mother. (§ 300,

---

[14] *In re Rocco M.* cited many cases in support of its holding that "the question under section 300 is whether circumstances *at the time of the hearing* subject the minor to the defined risk of harm," but almost all of those cases were decided under the prior statutory scheme. (*In re Rocco M., supra,* 1 Cal.App.4th at p. 824; see *In re James B.* (1986) 184 Cal.App.3d 524, 528, 529 [229 Cal.Rptr. 206]; *In re Katrina C., supra,* 201 Cal.App.3d at p. 546; *In re Jennifer P.* (1985) 174 Cal.App.3d 322, 325, fn. 2, 326 [219 Cal.Rptr. 909]; *In re Nicole B.* (1979) 93 Cal.App.3d 874, 877–878 [155 Cal.Rptr. 916]; *In re Jessica B.* (1989) 207 Cal.App.3d 504, 509, 517 [254 Cal.Rptr. 883]; *In re Lisa D.* (1978) 81 Cal.App.3d 192, 194, fn. 1, 196–197 [146 Cal.Rptr. 178]; cf. *In re Tiffany Y.* (1990) 223 Cal.App.3d 298, 301 [272 Cal.Rptr. 733] [petition filed in 1988, but alleging risk of harm rather than past harm].) The use of the present tense in the former statute (e.g., establishing jurisdiction where the " 'home is an unfit place' ") "indicates an intent that the unfitness exists at the time of the hearing." (*In re James B.,* at pp. 528, 529.) *In re Rocco M.* emphasized that the 1987 amendments to the dependency scheme *narrowed* the grounds for dependency jurisdiction. (*In re Rocco M.,* at p. 823.) However, it did so primarily by requiring "a *substantial* risk of *serious physical* harm or illness." (*Ibid.*) The prior statute "required no separate showing of concrete harm or risk of physical harm to the child." (*Id.* at p. 821.) The Legislature revised the ground for jurisdiction, as relevant here, to circumstances where the minor " 'has suffered, *or* there is a substantial risk that the minor will suffer, serious physical harm inflicted nonaccidentally upon the minor by the minor's parent or guardian.' " (*Id.* at p. 823, italics added, quoting § 300, subd. (a).) The Legislature apparently concluded that a showing of *past* serious physical harm was sufficient to establish a need for court intervention even without a separate showing of a substantial risk of future serious physical harm.

subd. (a).) There is no dispute that Mother nonaccidentally inflicted the January 2007 beating on David.

Similarly, in the other cases cited by Mother, the prior alleged physical harm did not establish jurisdiction because it did not satisfy the requirements of section 300. In *In re Alysha S.*, the June 1995 petition alleged, inter alia, " 'Prior to July 1994, while the minor was an infant and toddler, the mother observed the father to touch the minor on the buttocks and vaginal area in a way that seemed to her inappropriate.' " (*In re Alysha S., supra*, 51 Cal.App.4th at p. 396.) The Court of Appeal held the allegation was insufficient to establish jurisdiction. (*Id.* at pp. 399–400.) Relying on *In re Rocco M.*, the court emphasized the absence of any allegation of a current risk of harm to the minor. (*Id.* at pp. 398–399.) However, the court also observed that there were "no allegations as to the severity of any physical harm resulting from the alleged touchings." (*Id.* at p. 399.) That is, the petition failed to allege "serious physical harm" as required by section 300, subdivision (b), the alleged basis for jurisdiction. (51 Cal.App.4th at pp. 398–399.)

*In re Nicholas B.*, the other case cited by Mother, also relied on *In re Rocco M.* for the rule that a petition alleging jurisdiction under section 300, subdivision (b) must allege a current substantial risk that the child will suffer serious physical harm and held the standard was not satisfied in that case. (*In re Nicholas B.* (2001) 88 Cal.App.4th 1126, 1128, 1134, 1137 [106 Cal.Rptr.2d 465].) One of the allegations of the petition was that the mother struck the minor on the face, causing bruising and swelling, injuries the investigating social worker described as " 'very severe.' " (*Id.* at p. 1130.) The incident took place in September 1998, the petition was filed in March 1999, and the jurisdictional hearing took place in May 1999. (*Id.* at pp. 1130–1131.) Explaining why this allegation did not establish jurisdiction, the court wrote, "This is an incident the mother admitted and regretted. There are no further allegations nor supporting facts to suggest the serious physical harm inflicted by the mother will occur again. . . . If the incident was not likely to recur, then the petition failed to allege facts to demonstrate present or future risk of physical harm. *Section 300, subdivision (a) (current danger) is not alleged.*" (*Id.* at pp. 1134–1135, fn. omitted, italics added.) It is not clear why the court identified section 300, subdivision (a) with the parenthetical label, "current danger," as the subdivision applies where a child "has suffered, *or* there is a substantial risk that the child will suffer, serious physical harm . . . ." (§ 300, subd. (a), italics added.) However, the fact that the court expressly distinguished section 300, subdivision (a) makes the decision inapplicable here. To the extent *In re Nicholas B., supra*, 88 Cal.App.4th 1126, holds that section 300, subdivision (a) requires allegations of a substantial current risk of serious physical harm in order to establish jurisdiction under the subdivision, we disagree.

We note that section 300, subdivision (b), the alleged basis for jurisdiction in each of the cases cited by Mother, provides: "The child shall continue to be a dependent child pursuant to this subdivision *only so long as is necessary to protect the child from risk of suffering serious physical harm or illness.*" (§ 300, subd. (b), italics added; see *In re Alysha S., supra,* 51 Cal.App.4th at p. 397 [quoting this language]; *In re Nicholas B., supra,* 88 Cal.App.4th at p. 1134 [same].) Section 300, subdivision (a) does not contain similar language.

█ We hold that, in the absence of unusual circumstances not present here (such as a substantial lapse of time between the incident and the filing of a petition or the date of a jurisdictional hearing), an allegation that a child *has suffered* serious physical harm inflicted nonaccidentally by a parent or guardian is sufficient to establish jurisdiction under section 300, subdivision (a). Importantly, we note that a finding of jurisdiction does not alone give the juvenile court the right to remove a child from his parent's custody.

Here, the petition was facially sufficient because it alleged that David had suffered serious physical harm (bruises, red marks, welts, and broken skin on a seven-year-old boy) inflicted intentionally by Mother as a disciplinary measure when she struck him with a belt, cord, or ruler.

## C. *Amendment to Conform to Proof*

Finally, we observe that the evidence produced at the joint jurisdictional and dispositional hearing clearly demonstrated that David faced a current substantial risk of physical harm if returned to Mother's custody.[15] Therefore, even if a petition must allege a current substantial risk of harm in order to establish jurisdiction under section 300, subdivision (a), substantial evidence of such a risk was presented at the hearing. Accordingly, if Mother had challenged the facial sufficiency of the petition below, the court could have amended the petition to conform to proof. (§ 348; Code Civ. Proc., §§ 469, 470.)

---

[15] In her discussion of the facial insufficiency of the petition, Mother argues in passing that "there was no substantial evidence in terms of disposition that if David was returned to [Mother's] custody at the time of the July 11, 2007 hearing, that David likely would suffer serious physical harm by clear and convincing evidence. (25 U.S.C. 1912(e); section 361, subdivisions (c)(1) & (6).)" We could decline to address this argument because Mother failed to comply with rule 8.204(a)(1)(B), regarding the requisite specificity for asserting arguments on appeal. However, our conclusion that the record does contain substantial evidence of a current and substantial risk of serious physical harm if David were returned to Mother at the time of the jurisdictional and dispositional hearing refutes this argument, as well as establishes another reason why the challenge to the facial sufficiency of the petition fails.

Mother admitted that on January 7, 2007, she struck David twice with a belt and once with an electrical cord, hitting him seven times on each of the three occasions. The beating left David with bruises, linear red marks, welts and broken skin, which were documented by photographs and described by people who observed the injuries on the day following the beating. Mother does not dispute that these injuries constituted "serious physical harm" within the meaning of section 300, subdivision (a). David reported that Mother had hit him "a lot of times" in the past with a belt or cord and Mother admitted she started spanking him when he was four. Following the January 7 incident, David was removed from Mother's care and she only had supervised contact with him. Therefore, the lack of additional physical abuse does not demonstrate an absence of harm if David was returned to Mother's custody. Other evidence in the record affirmatively demonstrated a substantial risk of physical harm continued to exist.

First, the record contains substantial evidence that David was a particularly challenging child. The Agency's ICWA expert, Kathryn Manness, stated in her declaration, "According to all reports received, David's 'acting out' behaviors were extreme." The foster mother had reported the same disruptive behavior that Mother had described: "hitting other children, disrespectful when addressing adults (ordering them to do things), throwing and breaking things, etc." David had been diagnosed with attention deficit hyperactivity disorder and prescribed medication, and school personnel had noticed a significant improvement in David's behavior when he took the medication. David did not regularly take the medication while he was in Mother's custody.

Second, Mother's ability to discipline David without resorting to physical violence was compromised by her own history of physical abuse at the hands of her mother, her emotional instability, and her social isolation. Mother reported that she had been horribly beaten by her mother with a bullwhip throughout her childhood. She initially explained her conduct by saying that when she was hit as a child, it was an effective disciplinary technique, and by quoting the principle, "Spare the rod and spoil the child." She acknowledged that she needed parenting training so she would know how to discipline David without resorting to corporal punishment. Mother also reported that she was experiencing perimenopausal symptoms, including mood fluctuations, and had been diagnosed with bipolar disorder but was not taking medication for the disorder. Mother had told David's principal several times over the previous year that she had considered putting David up for adoption because she could not cope with his behavior. There was also evidence she was having difficulty meeting David's most basic needs. She had a history of referrals to child protective services for neglect of David, although most of the referrals were evaluated out or unsubstantiated, and school personnel reported a significant change in David after he was placed in foster care: he

was finishing his homework, reading, making friends, and behaving well. Finally, when Mother realized she was reaching a breaking point and needed help to cope with David, she had few people to turn to for support.

Third, there was substantial evidence that by the time of the July 11, 2007 hearing Mother had not substantially resolved the psychological factors that had interfered with her ability to discipline David without resorting to physical violence. Although Mother testified that she had obtained medicine for her menopausal symptoms and antidepressants for her mental health condition, the social worker had not received verification of that development. Mother's former therapist (who treated Mother through the week of June 11) described Mother as paranoid, exhibiting pressured speech, and tangential thinking, with significant mood fluctuations, short attention span, racing thoughts, and limited concentration. The therapist recommended that Mother undergo personality testing to determine if she could even benefit from counseling and if so what type of therapy would help her. Although Mother had completed a parenting course, the therapist opined that Mother had difficulty tailoring the general parenting techniques she had learned to specific situations and recommended parenting classes for Mother that would teach her simple disciplinary techniques. Mother had also attended many sessions of an anger management course and her teacher reported that she had made great progress. However, Mother had told the anger management counselor that she had merely spanked David; the counselor was not aware of the severity of the January 2007 beating. Mother's therapist also reported that Mother had minimized the incident.

Fourth, there were concrete examples that Mother was continuing to have difficulty controlling her behavior around David or safely responding to his misconduct. On June 26, 2007, Mother heard from David's father (an unreliable information source) that David was missing. She went to the foster home, banged on the door and windows, and called out for her son. David was scared and crying inside the house. The social worker reported that Mother was volatile with her and with others involved in the case. During visits, Mother seemed to be greatly affected by David's moods and became very agitated when he did not behave as she wished. At the July 11 hearing, the court commented that Mother's demeanor on the witness stand suggested that she was not prepared to take David back into her home.

Finally, several experts or professionals opined that David could not safely return to Mother's care: the social worker, the ICWA expert, and the Tribe's ICWA representative. The ICWA expert, a licensed social worker, also opined that David would suffer serious emotional harm if he were returned to Mother's care without certain preparations, including family therapy and interactive parent-child therapy.

■ In sum, there was substantial evidence that, at the time of the July 11, 2007 hearing, David faced a substantial risk of serious physical harm from Mother because there was a substantial risk that Mother would resort to physical violence in disciplining him.

### DISPOSITION

The July 11, 2007 jurisdictional and dispositional orders are affirmed.

Jones, P. J., and Simons, J., concurred.

Appellant's petition for review by the Supreme Court was denied November 12, 2008, S166932.